**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

———————

No. 96-3037

———————

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   District of Minnesota. |
| Kymm Elizabeth Hipenbecker, | * |
| | * |
| Appellant. | * |

———————

Submitted: February 13, 1997
Filed: June 4, 1997

———————

Before MAGILL,[1] BEAM, and LOKEN, Circuit Judges.

———————

MAGILL, Circuit Judge.

    Kymm E. Hipenbecker pled guilty in the district court[2] to the theft and conversion of an annuity and a certificate of deposit, in violation of 18 U.S.C. § 2314 (1988 & Supp. III 1991). While free on bond prior to her sentencing, Hipenbecker embezzled funds from her employer. Because Hipenbecker committed this crime while

———————

[1]The Honorable Frank J. Magill was an active judge at the time this case was submitted and assumed senior status on April 1, 1997, before the opinion was filed.

[2]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

free on bond, the district court during sentencing declined to make a U.S.S.G. § 3E1.1 acceptance-of-responsibility downward sentencing adjustment and also made a U.S.S.G. § 5K2.0 upward sentencing departure. Hipenbecker appeals her sentence, arguing that the district court impermissibly double counted by both applying § 5K2.0 and declining to apply § 3E1.1. The issue is one of first impression in our circuit and we affirm.

## I.

On August 6, 1990, Hipenbecker and her husband bought George and Nancy Walker's home in Minnesota. After the Hipenbeckers had taken possession of the home, Great Westlife and Annuity Insurance Company (Great Westlife) mistakenly sent a letter concerning an annuity held by George Walker to the Hipenbecker residence. On August 2, 1991, Hipenbecker wrote a letter to Great Westlife. In the letter, Hipenbecker forged George Walker's signature and requested that Great Westlife make a wire transfer of George Walker's annuity proceeds to Hipenbecker's bank account. As a result, Great Westlife transferred $49,889.83 into Hipenbecker's account.

In late 1991, Hipenbecker forged George Walker's name on a power of attorney document and then converted to her possession a certificate of deposit in the amount of $19,260.92 held by George Walker. On January 8, 1992, Hipenbecker forged the signatures of both George and Nancy Walker on a deed for real property. Hipenbecker then sold the real property and kept the $79,410.50 in proceeds. In all, Hipenbecker stole $148,561.25.

On November 8, 1993, the Hennepin County, Minnesota prosecutor's office charged Hipenbecker with the crime of wrongful sale and conversion of the Walkers' real property. She was not charged with conversion of the annuity proceeds or the certificate of deposit at that time, presumably because those crimes had not yet been

discovered.  Hipenbecker pled guilty to the charge in Minnesota state court on March 2, 1994, and she was sentenced to forty-five months imprisonment. Hipenbecker served twenty months at the Minnesota Correctional Facility at Shakopee, Minnesota.

While still serving her state sentence, Hipenbecker was interviewed by the Federal Bureau of Investigation.  During the interview, Hipenbecker confessed to converting George Walker's annuity and certificate of deposit to her own use.  On December 20, 1995, Hipenbecker pled guilty in the district court to having committed these two offenses, in violation of 18 U.S.C. § 2314.

The district court and the parties agreed that, under the sentencing guidelines, Hipenbecker's relevant conduct included the theft and conversion of the Walkers' annuity, the theft and conversion of the certificate of deposit, and the conversion of the Walkers' real property. Because Hipenbecker's federal sentence was increased due to her state court conviction for the January 1992 real property conversion, and because she had already served twenty months for this conviction, the parties and the district court agreed to reduce Hipenbecker's federal sentence, pursuant to U.S.S.G. §§ 5G1.3(b) and 5K2.0, by twenty months.

Pending sentencing in federal court, Hipenbecker was released on bond.  While free on bond, Hipenbecker became employed by the Minnesota Association of Community Organizations for Reform Now (ACORN).  Soon after being hired, Hipenbecker embezzled approximately $1500 from ACORN.  Upon learning of Hipenbecker's latest crime, the district court revoked Hipenbecker's bond and informed her that the district court was contemplating an upward sentencing departure.

The district court held a sentencing hearing on July 30, 1996.  At the sentencing hearing, the district court found that Hipenbecker had embezzled funds from ACORN while she was free on bond.  Because of her continued criminal conduct while free on bond, the district court made a U.S.S.G. § 5K2.0 two-point upward departure.  Also

because of Hipenbecker's continued criminal conduct while free on bond, the district court denied Hipenbecker's request for a U.S.S.G. § 3E1.1 two-point sentence reduction for acceptance of responsibility.

Having imposed a § 5K2.0 upward departure and having declined to make a § 3E1.1 downward adjustment for acceptance of responsibility, the district court found that Hipenbecker had an offense level of 17 and a criminal history category of V. Hipenbecker's sentencing guidelines range, after subtracting the twenty-month reduction for the time she had served in state prison, was twenty-six to thirty-seven months. The district court sentenced Hipenbecker to thirty-six months imprisonment to be followed by three years of supervised release and a special assessment fee of $50. Hipenbecker appeals.

**II.**

Hipenbecker argues that the district court impermissibly double counted when it sentenced her because, based on her single act of embezzling while out on bond, the district court both imposed a U.S.S.G. § 5K2.0 upward departure and denied her request for a U.S.S.G. § 3E1.1 acceptance-of-responsibility downward adjustment. We disagree.

Double counting occurs when "one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Alexander, 48 F.3d 1477, 1492 (9th Cir.) (quotations and citations omitted), cert. denied, 116 S. Ct. 210 (1995). However, double-counting is permissible if (1) the Commission intended the result and (2) each statutory section concerns conceptually separate notions relating to sentencing. See United States v. Saffeels, 39 F.3d 833, 836 (8th Cir. 1994). We review de novo whether a district court impermissibly double

counted in applying the sentencing guidelines.   See United States v. Lamere, 980 F.2d 506, 510 (8th Cir. 1992).

Whether it is permissible for a district court, based on a defendant's single criminal act, both to impose a § 5K2.0 upward departure and to deny the defendant's request for a § 3E1.1 downward adjustment is an issue of first impression in this Circuit.   The Eleventh Circuit, however, has addressed this issue in United States v. Aimufua, 935 F.2d 1199 (11th Cir. 1991), and we find the Aimufua court's reasoning persuasive.

Turning to the first prong of the double counting test, whether the Commission intended the result, we must consider whether the Commission intended that a district court could both impose a § 5K2.0 upward sentencing departure and impose another provision of the sentencing guidelines based on the same conduct.   We agree with the Aimufua court that the Commission intended this result, id. at 1201, because the policy statement for § 5K2.0 specifically provides that "the court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (e.g. as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate." U.S.S.G. § 5K2.0, p.s.

Thus, because § 5K2.0 contemplates the simultaneous consideration of factors that may be considered elsewhere in the computation of a defendant's sentencing guideline range, the Commission must have contemplated double counting when it created § 5K2.0.   As a result, any double counting that might occur by the joint application of § 5K2.0 and § 3E1.1 was intended.

We next consider whether the Commission intended that a district court could both decline to grant a § 3E1.1 downward sentencing adjustment and impose another sentencing guidelines section based on the same conduct. We agree with the Aimufua

court that "section 3E1.1 in its commentary permits the use of the same conduct to trigger two separate guideline sections."  <u>Aimufua</u>, 935 F.3d at 1201.

In Hipenbecker's case, embezzlement, like all criminal conduct, is one factor that could determine her appropriate criminal history category under Chapter Four of the sentencing guidelines--a calculation that must be performed for every criminal defendant who is sentenced under the sentencing guidelines.  At the same time, the commentary to § 3E1.1 provides that evidence of acceptance of responsibility "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n.3).  Under the sentencing guidelines, "conduct of the defendant that is inconsistent with such acceptance of responsibility," <u>id.</u>, includes further criminal conduct.  <u>See</u> U.S.S.G. § 3E1.1, comment. (n.1(b)).

Section 3E1.1 does not indicate that criminal conduct already considered in determining the defendant's criminal history category under Chapter Four of the sentencing guidelines cannot also be considered under § 3E1.1.  Instead, both § 3E1.1 and Chapter Four mandate that a district court is to consider criminal conduct in which the defendant has engaged prior to sentencing.  By calling for consideration of the same criminal conduct in two provisions that would be routinely applied together, the Commission necessarily contemplated double counting when it created § 3E1.1.

Turning to the second prong of the double counting test, we must consider whether both § 5K2.0 and § 3E1.1 concern conceptually separate notions related to sentencing.  <u>See</u> <u>Saffeels</u>, 39 F.3d at 836.  We agree with the <u>Aimufua</u> court that, when these provisions are applied together, there is no impermissible double counting because the two sections at issue address "conceptually separate notions relating to sentencing."  <u>Aimufua</u>, 935 F.2d at 1201.  The <u>Aimufua</u> court reasoned that "section 3E1.1 operates to ameliorate a sentence for a defendant who has shown sincere remorse for his crime while an upward departure from the guidelines under section 5K2.0 enhances an otherwise inadequate sentence."  <u>Id.</u>

We conclude, as the <u>Aimufua</u> court concluded, that "the Sentencing Guidelines recognized the potential for double counting in certain cases involving both section 3E1.1 and section 5K2.0." <u>Id.</u> Our conclusion is bolstered by the fact that, as the <u>Aimufua</u> court also noted, "[t]he guidelines list no specific rule to prohibit such double counting." <u>Id.</u> Because we conclude that the joint application of these two sections does not constitute impermissible double counting, we hold that the district court did not err when it applied both of these sections to Hipenbecker.

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.