# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2241

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Randall Dean Rohwedder, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 13, 2000

Filed: March 5, 2001

_____

Before WOLLMAN, Chief Judge, RICHARD S. ARNOLD, and HANSEN,
Circuit Judges.

_____

WOLLMAN, Chief Judge.

After Randall Dean Rohwedder pled guilty to various drug and firearms
possession crimes, the district court[1] sentenced him to a term of imprisonment of 188
months. Rohwedder appeals his sentence, arguing that the court erred when it assessed

_____

[1]The Honorable Mark W. Bennett, Chief Judge, United States District Court for
the Northern District of Iowa.

enhancements under the sentencing guidelines for his possession of a sawed-off shotgun and for possession of a firearm in connection with a felony offense. We affirm.

## I.

On July 14, 1998, with Rohwedder's consent, a local law enforcement officer searched the Mason City, Iowa, apartment where Rohwedder lived with his girlfriend, looking for items unrelated to this case. The officer noticed several guns in a glass-faced gun cabinet in the living room. The officer knew that Rohwedder had been convicted of a felony and thus was likely unable to lawfully possess guns.

Shortly thereafter, police officers returned to the apartment with a warrant authorizing them to search for weapons. The officers seized a number of guns from the living room cabinet, a loaded handgun from under the sofa, and several more guns, including a sawed-off shotgun, from a locked cabinet in the bedroom that Rohwedder and his girlfriend shared. Both Rohwedder and his girlfriend had access to the cabinet keys, which were kept in the bedroom. During this search, the officers discovered drugs and objects connected with the trafficking of drugs, which were later seized after the officers had obtained an additional warrant. In particular, the officers discovered and seized methamphetamine from under the sofa and from the locked bedroom gun cabinet.

Pursuant to a plea agreement, Rohwedder pled guilty to possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and to being an unlawful user of a controlled substance in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3).

In determining Rohwedder's sentence based on the firearms charges, the district court started with a base offense level of 22 under sentencing guidelines section

2K2.1(a)(3), enhanced it two levels pursuant to section 2K2.1(b)(3) (possession of a destructive device), four levels pursuant to section 2K2.1(b)(5) (possession of firearm in connection with a felony offense), and seven more levels through enhancements unchallenged in this appeal, ending with an adjusted offense level of 35.

## II.

We review the district court's application of the sentencing guidelines de novo and its factual findings for clear error. United States v. Bad Wound, 203 F.3d 1072, 1076 (8th Cir. 2000).

## A.  Destructive Device Enhancement

Pursuant to section 2K2.1(b)(3), an offense level is enhanced two levels if the offense involved a "destructive device," as defined in 26 U.S.C. § 5845(a).  U.S. Sentencing Guidelines Manual § 2K2.1(b)(3) & cmt. n.4.  It is undisputed that the seized sawed-off shotgun meets that statutory definition.  Rohwedder contends that the court incorrectly applied the subsection (b)(3) enhancement because (1) he did not know that the shotgun was shortened and (2) the enhancement constitutes double counting because the harm inherent in the shotgun had already been counted when the court set the base offense level pursuant to section 2K2.1(a)(3).

First, Rohwedder argues that the government did not present sufficient evidence to prove that he knew the characteristics of the shotgun, stating that his girlfriend had brought it into the apartment and placed it into the locked cabinet essentially without his knowledge.

In United States v. Otto, 64 F.3d 367, 370 (8th Cir. 1995), a case involving a sawed-off rifle, we held, citing Staples v. United States, 511 U.S. 600 (1994), that to convict a defendant for possessing a firearm as defined in § 5845(a), the government

-3-

"must prove that the defendant knew of the features of the weapon that brought it within the scope of" unlawful possession, in particular, of a reduction in barrel and overall length.[2] Here, the district court found that Rohwedder knew that he possessed a sawed-off shotgun. The court noted Rohwedder's plea agreement stipulations to knowing possession and the inconsistencies in Rohwedder's testimony. The court also observed Rohwedder's experience with weapons, stating that it "would be readily apparent to a defendant who was in possession of as many guns, including long rifles and the like, that this would be a destructive device."

We discern no error in the court's finding. In the plea agreement, Rohwedder stipulated to knowingly possessing all of the guns, including the sawed-off shotgun. Following the general "knowing possession" stipulation was a stipulation targeting the characteristics of the sawed-off shotgun in particular:

> The [sawed-off] shotgun had its barrel and stock sawed off such that it had a barrel length of approximately 11 ½ inches and overall length of approximately 19 inches, . . . which firearm was not registered . . . , but the defendant does not admit that he knew that the shotgun's length was sufficiently short such that he was required to register the firearm . . . .

Additionally, the cabinet containing the shotgun was in Rohwedder's bedroom and was locked with a key to which Rohwedder admittedly had access. Along with the shotgun, the bedroom cabinet contained several guns that Rohwedder does not dispute knowingly possessing. The shotgun itself was more than six inches shorter than the minimum length allowable, an alteration that without question would be noticeable to

---

[2] We have also noted that the "quasi-suspect" character of a sawed-off shotgun may require a less stringent mens rea showing, see United States v. Barr, 32 F.3d 1320, 1323-24 (8th Cir. 1994); Staples, 511 U.S. at 611-12. This case does not require our consideration of a lesser standard, because the government presented sufficient evidence under the more stringent standard.

Rohwedder, who was familiar with guns, particularly long guns. Rohwedder admitted to ownership of most of the seized weapons, many of which were long rifles and shotguns, and to using them for hunting. We find no clear error in the district court's conclusion that Rohwedder knew that the shotgun had been shortened.

Second, Rohwedder contends that the (b)(3) destructive device enhancement was applied improperly because the shotgun had already been referred to by the court in determining Rohwedder's base offense level pursuant to section 2K2.1(a)(3), and thus possession of the shotgun was improperly double counted.[3]

"Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Hipenbecker, 115 F.3d 581, 583 (8th Cir. 1997) (internal quotation marks and citation omitted). Double counting is permissible if the Sentencing Commission intended that result and each section concerns conceptually separate notions relating to sentencing. Id. We review this matter de novo. Id.

Even assuming that subsections (a)(3) and (b)(3) each individually fully account for the harm of possession of a sawed-off shotgun, Rohwedder's claim fails because the Commission intended the result and each section concerns conceptually separate notions relating to sentencing. The district court noted that although the subsection (b)(3) enhancement "looks like double count[ing]," the guidelines specifically state that applying both sections is proper. See U.S. Sentencing Guidelines Manual § 2K2.1, cmt. n.11 ("A defendant whose offense involves a destructive device receives both the

---

[3]Section 2K2.1(a)(3) sets a base offense level of 22 if the "offense involved a firearm described in 26 U.S.C. § 5845(a) . . . , and the defendant had one prior felony conviction of either a crime of violence or controlled substance offense . . . ."

base offense level from the subsection applicable to a firearm listed in 26 U.S.C. § 5845(a) (e.g., . . . (a)(3) . . .), and a two-level enhancement under subsection (b)(3).").

We agree that the application note makes clear that the Commission intended both subsections (a)(3) and (b)(3) are to be applied to offenses involving destructive devices such as a sawed-off shotgun. Because Rohwedder does not argue that the application note violates the constitution or a federal statute or reflects a plainly erroneous reading of section 2K2.1, it binds us in this case. United States v. Hawkins, 181 F.3d 911, 913 (8th Cir. 1999); United States v. Justice, 56 F.3d 1329, 1330 (11th Cir. 1995) (per curiam) (because note 11 is not "plainly erroneous or inconsistent with" section 2K2.1, it controls regardless of conflict with other guideline).

The subsections are also conceptually separate. Section 2K2.1 part (a) sets out base offense levels for certain firearms crimes, taking into account factors such as a defendant's criminal history, whether the defendant is a "prohibited person," and the types of firearms involved in the offense. Part (b), in contrast, concerns the specific characteristics of the offense charged that serve to enhance the base offense level. Subsection (b)(3) involves a specific definition of destructive device and applies regardless of the base offense level applicable to a particular defendant. We conclude that these subsections are sufficiently conceptually separate notions to support the application of both in this case. See Hawkins, 181 F.3d at 913 (looking at structure of 2K2.1 and comparing (a)(6) with (b)(4)); United States v. Shepardson, 196 F.3d 306, 312-14 (2d Cir. 1999) (analyzing section 2K2.1(a)(4), (a)(7), and (b)(4)); United States v. Brown, 169 F.3d 89, 93 (1st Cir. 1999) (analyzing section 2K2.1(a)(2) and (b)(4)). Accordingly, the district court correctly enhanced Rohwedder's offense level pursuant to section 2K2.1(b)(3).

## B.  Firearm In Connection with a Felony

Finally, Rohwedder argues that the court erred when it assessed a four-level enhancement pursuant to section 2K2.1(b)(5) because Rohwedder possessed firearms in connection with the methamphetamine offense.  Rohwedder contends that there was no evidence that any of the weapons were connected with the methamphetamine or the distribution conviction, and that he possessed all of the weapons for hunting purposes.

Pursuant to section 2K2.1(b)(5), the sentencing court applies a four-level enhancement "if the defendant . . . possessed any firearm . . . in connection with another felony offense . . . ."  "'In connection with' means 'that the firearm must have some purpose or effect with respect to,' and 'must facilitate, or have the potential of facilitating,' another felony offense; 'its presence or involvement cannot be the result of accident or coincidence.'"  United States v. Fredrickson, 195 F.3d 438, 439-40 (8th Cir. 1999) (per curiam) (quoting United States v. Regans, 125 F.3d 685, 686 (8th Cir. 1997)).  We review for clear error the court's factual findings about the purpose underlying the possession of the firearm.  Id.

Rohwedder argues that, because nearly all of the guns were found in cabinets, one of which was locked, and thus were spatially isolated from the drugs, there was no showing by the government that the weapons had any connection with criminal activity.  Because firearms are tools of the drug trade, however, the weapons' close physical proximity to the significant quantity of drugs provides a sufficient nexus between the two to support an enhancement pursuant to section 2K2.1(b)(5).  Regans, 125 F.3d at 686.  Several of the seized weapons were indeed in a locked cabinet in the bedroom, but in that same cabinet was the majority of the methamphetamine, a fact that negates Rohwedder's claim of spatial isolation.  A loaded handgun was found under the couch in the living room, as were more drugs and drug-related paraphernalia.  The living room gun cabinet, located approximately eight to ten feet from the couch, also contained a

loaded handgun.  Thus, the district court did not err in finding that the weapons were possessed in connection with the drug offense.

Rohwedder's final contention is that because he was merely holding the methamphetamine for someone else, his weapons were unconnected to the drugs. Leaving aside Rohwedder's guilty plea to possession with intent to distribute, we have noted that weapons provide protection for those who merely possess drugs.  United States v. Belitz, 141 F.3d 815, 818 (8th Cir. 1998); Regans, 125 F.3d at 686. Likewise, we reject Rohwedder's contention that because the weapons were all for hunting purposes, they should not have been found to be connected to the drug offense, particularly in light of the nature of several of the weapons, such as the sawed-off shotgun, which is a quasi-suspect weapon not regularly used for hunting, see Barr, 32 F.3d at 1324 ("A defendant who observes [a quasi-suspect weapon] cannot possess it with innocence.").  Accordingly, the district court did not err in applying the four-level enhancement.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.