# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2405

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | Appeal from the United States |
| | * | District Court for the District of |
| v. | * | South Dakota. |
| | * | |
| Tyrell Vincent Thin Elk, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: Dec. 10, 2002

Filed: March 3, 2003

_____

Before WOLLMAN, GIBSON, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Tyrell Vincent Thin Elk ("Thin Elk") drove while intoxicated and caused a head-on collision with another vehicle seriously injuring seventy-six year old Russell Koehler and his seventy-four year old wife, Doris Koehler. Mrs. Koehler eventually died from her injuries. Thin Elk pled guilty to assault resulting in serious bodily injury regarding the injuries to Mr. Koehler and involuntary manslaughter regarding

the death of Mrs. Koehler. The district court[1] assessed the severity of injury to Mr. Koehler as a "permanent or life threatening bodily injury" that called for a six level increase under U.S.S.G. § 2A2.2(b)(3)(C). To reach this six level increase, the district court relied on psychological injury to Mr. Koehler in combination with his physical injuries. In addition, the district court departed upwardly pursuant to U.S.S.G. § 5K2.3, relying on Mr. Koehler's extreme psychological injury. Thin Elk appeals his sentence claiming that the district court impermissibly double-counted Mr. Koehler's psychological injuries by considering them under both U.S.S.G. § 5K2.3 and 2A2.2(b)(3)(C). We affirm.

I.

Thin Elk is an enrolled member of the Rosebud Sioux Tribe. He has an extensive criminal history. On July 8, 2001, Rosebud Sioux Tribal law enforcement officers arrested him on a variety of warrants and charges. On August 21, 2001, the day prior to his release from jail, he told a detention officer that the first thing he was going to do upon release was get "wasted." He was released on August 22, 2001.

On August 23, 2001, with a blood alcohol level of .257, traveling at a speed of approximately 95 miles per hour, and over the objections and pleading of a female passenger, Thin Elk pulled out to pass another vehicle. He proceeded to drive down the center of the road, not returning to his own lane. In doing so, he crashed his vehicle head-on into the vehicle of Mr. and Mrs. Koehler. The Koehlers were initially treated at the Indian Health Service Hospital in Rosebud, South Dakota, and were later taken via air ambulance to the Sioux Valley Hospital in Sioux Falls, South Dakota.

---

[1]The Honorable Charles B. Kornman, United States District Judge for the District of South Dakota

Mr. Koehler was treated for a mild pulmonary contusion, a fractured left humerus, and a fractured left femur. Mrs. Koehler was treated for bilateral pulmonary contusions, a right ankle fracture, a puncture wound to her left knee, questionable myocardial infarction, and closed head injury. The Koehlers remained hospitalized for about two weeks in Sioux Falls before being transported to an assisted living facility near their home in Las Vegas, Nevada. Mrs. Koehler developed acute gastrointestinal bleeding and a diaphragmatic rupture with herniation of the stomach into the chest. She was admitted to intensive care at the Desert Springs Hospital in Las Vegas where she remained weak and continued to decline. She died on November 2, 2001, as a result of the injuries and complications she suffered from the accident. The Koehlers had been married fifty-three years.

Mr. Koehler was in good health and was active prior to the accident. He walked five to seven miles per day. He was on medication for the beginning stages of dementia. As a result of the accident, he requires ongoing home health care at a cost of about $3,000 per month, his mobility is limited, his dementia has progressed dramatically, and he is on medication for depression. Medical testimony described Mr. Koehler's dementia as having advanced by ten years and as being caused fifty percent by age and fifty percent by the accident. Mr. Koehler continues to suffer severe pancreatitis and memory loss which are related to the accident. He has stated that he no longer wants to live. The Koehler family has been billed approximately $2.5 million for medical expenses as a result of the accident.

Following Thin Elk's plea of guilty, the court ordered a presentence investigation report ("PSR"). Paragraph 25 of the PSR called for a four level increase under U.S.S.G. § 2A2.2(b)(3)(B), characterizing the injuries to Mr. Koehler as "Serious Bodily Injuries." The government objected, urging instead that the court characterize Mr. Koehler's injuries as "Permanent or Life Threatening Bodily Injuries" and impose a six level increase under U.S.S.G. § 2A2.2(b)(3)(C). The government also moved for an upward departure under U.S.S.G. § 5K2.3 for extreme

3

psychological injury.

At the sentencing hearing, the district court sustained the government's objection and imposed the six level increase stating, "the psychological injury in combination with the physical injury here to the victim should be considered and taken into account in determining what is the appropriate enhancement, and I find that the victim here, Mr. Koehler, did sustain permanent and life threatening bodily injury, and that he continues to suffer from that." Sentencing Transcript at 33-34. In addition, the district court granted the government's motion for an upward departure under U.S.S.G. § 5K2.3 based on the severity of Mr. Koehler's psychological injuries and based on the fact that Thin Elk knowingly risked the harm that, in fact, occurred to his victims. The district court stated:

> It's also clear to me that the injury was knowingly risked by this defendant. Driving 95 miles an hour while incredibly intoxicated, on the wrong side of the road, passing where he shouldn't have been, and ignoring the pleas of his passenger to slow down or to let her drive in which he said, "Shut the f[___] up," clearly indicates that he knowingly risked what happened here. He does not now – is not now able to recall that, but that doesn't make any difference.

> And, so, Mr. Koehler's psychological injury here is much more serious than that otherwise suffered by a similar victim, even those in which the six-level enhancement has already been applied.

Sentencing Transcript at 35. The district court cited numerous factors that influenced its decision to depart upward:

> He and his wife were married for 53 years. He was age 76. A person who is already starting down the road of dementia or Alzheimer's disease is, of course, severely impacted by injuries of this type. Even people of advanced age who are not approaching problems with Alzheimer's are severely impacted by injuries and by the process of

4

going through treatment as to all those matters. The confusion of being in the hospital and being in some other type facility [sic]. And, of course, the anesthesia that is required in dealing with these things is a well-known factor, as well, in impacting people who are involved in these type[s] of very serious accidents. It's also clear based on the testimony that I heard today from the son of the victims that the victim, Mr. Koehler, is suffering from severe depression, [and that he] no longer wants to live.

Sentencing Transcript at 35-36.

It is undisputed that the district court considered the psychological injury to Mr. Koehler for both the increase and the upward departure. The district court even noted, "Now, I totally realize that this, to some extent, appears to be double counting, the Court having already ordered the six-level increase. But I find that this case is sufficient to justify both the six-level increase an[d] upward departure." Sentencing Transcript at 36.

As a means to quantify an appropriate value for the upward departure, the district court moved horizontally across the guideline table rather than vertically down the table. It imposed the sentence as though Thin Elk had a criminal history category of IV rather than his actual criminal history category of II. In response to questions from Thin Elk's counsel, the court clarified that the upward departure was, in fact, based on extreme psychological injury under U.S.S.G § 5K2.3 and that the reference to Thin Elk's criminal history level was merely a guide or tool for calculating an appropriate departure value. See Sentencing Transcript at 38-39. With the increase and upward departure, the district court sentenced Thin Elk to 69 months on the assault count and 69 months on the involuntary manslaughter count, to be served concurrently, followed by three years of supervised release. Thin Elk appeals the upward departure alleging that it comprised impermissible double counting of Mr. Koehler's psychological injury. He does not appeal the manner in which the district court calculated the departure.

II.

We review the district court's construction of the sentencing guidelines de novo and its factual findings for clear error. United States v. Rohwedder, 243 F.3d 423, 425 (8th Cir. 2001). The de novo standard extends to our review of the permissibility of double counting. Id. at 426-27; United States v. Kenney, 283 F.3d 934, 936 (8th Cir. 2002). We review the district court's election to depart from the guidelines for abuse of discretion "because the decision to depart embodies the traditional exercise of discretion by the sentencing court." Commentary to U.S.S.G. § 5K2.0 (citing Koon v. United States, 518 U.S. 81 (1996)). The abuse of discretion standard extends to our review of the district court's determination as to "whether a given factor is present to a degree not adequately considered by the Sentencing Commission." United States v. Lewis, 235 F.3d 394, 396 (8th Cir. 2000).

18 U.S.C. § 3553(b) permits a sentencing court to impose a sentence outside the applicable Guideline range if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Id. The Sentencing Commission enumerated some of the factors that it believed were not adequately accounted for in the formulation of the Guidelines and might merit consideration as aggravating or mitigating circumstances. U.S.S.G. § 5K2.0 (explaining the rationale behind the factors listed in U.S.S.G. § 5K2.1-21). Extreme psychological injury is one of these specifically enumerated factors. U.S.S.G. § 5K2.3.[2]

---

[2]U.S.S.G. § 5K2.3 provides:

If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the

6

U.S.S.G. § 5K2.0[3] is a "Grounds for Departure" policy statement that introduces the specifically enumerated factors and explains their application. This general policy statement endorses the double counting of a factor for an upward departure where that factor is taken into account elsewhere in the Guidelines, ". . . e.g., as a specific offense characteristic or other adjustment[,]" but where, "in light of unusual circumstances, the weight attached to that factor under the guidelines is inadequate or excessive." Id. This court has previously relied on the general policy statement of § 5K2.0 to find double counting permissible in the context of departures. United States v. Hipenbecker, 115 F.3d 581, 584 (8th Cir. 1997) ("because § 5K2.0

_____

psychological injury and the extent to which the injury was intended or knowingly risked.

Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or changes in behavior patterns. The court should consider the extent to which such harm was likely, given the nature of the defendant's conduct.

[3]U.S.S.G. § 5K2.0 provides:

Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." . . . Similarly the court may depart from the guidelines, even though the reason for departure is taken into consideration in determining the guideline range (e.g., as a specific offence characteristic or other adjustment) if the court determines that, in light of unusual circumstances, the weight attached to that factor under the guidelines is inadequate or excessive. Id.

7

contemplates the simultaneous consideration of factors that may be considered elsewhere in the computation of a defendant's sentencing guideline range, the Commission must have contemplated double counting when it created § 5K2.0.").

This court's conclusion in <u>Hipenbecker</u> is consistent with the Supreme Court's thorough discussion of departures in <u>Koon v. United States</u>, 518 U.S. 81, 95-96 (1996). In <u>Koon</u>, the Court noted that the consideration of some factors, such as race, sex, national origin, religion, etc., is forbidden, while the use of other factors is encouraged or discouraged (e.g., those factors set forth as bases for departure in § 5K2.1-21). Ultimately, the Court set forth instructions for dealing with various factors that might arise:

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guidelines, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.

<u>Id.</u> <u>See</u> <u>also</u>, <u>United States v. Evans</u>, 272 U.S. 1069, 1089 (8th Cir. 2001) ("under <u>Koon</u> [], conduct can be considered both in the crime and in the upward departure. The key question is whether the factor is present to an exceptional degree or something else make the case different from the ordinary case where the factor is present.") (internal citations omitted).

The case at hand presents the third scenario described in <u>Koon</u>. The relevant special factor, namely, extreme psychological injury under U.S.S.G. § 5K2.3, is an "encouraged factor." This encouraged factor is taken into account elsewhere within the Guidelines, specifically in the definition of "Permanent or Life Threatening Bodily Injury." Under U.S.S.G. § 2A2.2(b)(3)(C), a "Permanent or Life Threatening

8

Bodily Injury" is an "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent. . . ." U.S.S.G. § 1B1.1 n.1(g) (adopted by reference in U.S.S.G. § 2A2.2(b)(3)(C) n.1) (emphasis added). Because the relevant special factor in the present case is an encouraged factor already taken into consideration elsewhere in the Guidelines, an upward departure is permissible only if "the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Koon, 518 U.S. at 96.

Our review of the record leads us to conclude that the district court did not commit clear error in its factual determinations concerning Mr. Koehler's mental condition or abuse its discretion when it determined that Mr. Koehler's psychological injury was present to an exceptional degree. The district court recognized the issue of double counting and properly set forth detailed findings concerning the causes and severity of Mr. Koehler's depression (which caused him to state that he no longer wished to live): the loss of a spouse of fifty-three years, the extensive treatment required by the physical injuries to a seventy-six year old victim, confusion regarding hospitalization and moves between hospitals and assisted living facilities, and the impact of the anesthesia attendant to the treatment for physical injuries. The district court also explained the substantial impairment of Mr. Koehler's mental function due to the aggravation of his dementia and set forth specific findings concerning "the extent to which the injury was knowingly intended or risked." U.S.S.G. § 5K2.3.

Finally, we find no abuse of discretion in the district court's holding that the six level enhancement for the specific offence characteristic of "Permanent or Life Threatening Bodily Injury" under § 2A2.2(b)(3)(C) failed to adequately account for Mr. Koehler's psychological injury. The district court expressly noted that the six level enhancement was based in part on physical injuries and only in part on his psychological injuries. Accordingly, we find no abuse of discretion in the district court's determination that psychologic injury was present to an exceptional degree

and that § 2A2.2(b)(3)(C) alone failed to adequately take into consideration Mr. Koehler's injuries.

Finding no error in the district court's interpretation of the guidelines, and no abuse of discretion in the district court's election to depart upwardly, we affirm.

A true copy.

Attest.

U.S. COURT OF APPEALS FOR THE EIGHTH CIRCUIT