# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2258

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| James Edward Thornberg, | * | District Court for the |
| also known as Samuel James Thornberg, | * | District of South Dakota. |
| also known as Samuel James Colby, | * | |
| also known as James Edward Thornbag, | * | |
| also known as Robert Johnson, | * | |
| also known as George Swenson, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: March 12, 2003
Filed: April 29, 2003

_____

Before HANSEN, Chief Judge,[1] LOKEN and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

James Edward Thornberg pled guilty to wire fraud, in violation of 18 U.S.C.

---

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

§ 1343, and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). The district court[2] sentenced him to 96 months after departing upward from the sentencing guidelines. Thornberg appeals, and we affirm.

Throughout 1998 James Thornberg engaged in an elaborate scheme to sell ethanol powered vehicles. The vehicles did not actually exist, but Thornberg and his accomplice created false press releases, color brochures, specification sheets, and invoices about them. They offered vehicles powered completely by ethanol and capable of traveling over 1000 miles on one tank of fuel. Victims of the fraud were induced to furnish down payments on the vehicles, and more than $65,000 had been mailed or wired to Thornberg before the scheme was uncovered. The vehicles were never produced, and the down payments were never returned.

At the time Thornberg was arrested in November 2001, he was also operating a business called Bell Corporation. This entity purported to distribute storage structures throughout the Western Hemisphere and to do more than $40,000,000 in business annually. Thornberg later admitted that his only financial asset was a used car worth $5000. The voice mail service for Bell Corporation continued to be operational into at least the first half of 2002.

In January 2002, Thornberg was indicted on twenty two felony charges: one count of conspiracy, in violation of 18 U.S.C. § 371, seven counts of mail fraud, in violation of 18 U.S.C. § 1341, five counts of wire fraud, in violation of 18 U.S.C. § 1343, and nine counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Thornberg entered into a plea agreement, which was not binding on the court, under which he would plead guilty to one count of wire fraud and one count of money laundering. The United States agreed in return to dismiss the twenty

---

[2]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

other counts of the indictment and to recommend that Thornberg receive a reduction in his offense level for acceptance of responsibility and that he be sentenced within the guideline range determined by the district court.

In researching Thornberg's criminal history for the presentence investigation report (PSR), the United States Probation Office learned that among his convictions was one for a California battery. Thornberg urged the Probation Office not to count the battery conviction when calculating his criminal history, reporting that it had been dismissed upon his completion of an anger management course. The investigation by the Probation Office revealed that the battery charge had indeed been dismissed, but only after Thornberg had submitted to the court a letter and certificate of course completion signed by John W. Venutti, identified as a psychologist. Further investigation revealed that Venutti was an alias used by Thornberg and that the documents submitted to the court in California were false. The battery was then counted in calculating Thornberg's criminal history.

Thornberg came before the district court for sentencing on April 29, 2002. The court increased his offense level by four levels under § 2B1.1 of the sentencing guidelines because the wire fraud had involved sophisticated means and false pieces of identification. See United States Sentencing Commission, Guidelines Manual, § 2B1.1(b)(8)(C), (b)(9)(C)(i) (Nov. 2001) [USSG]. Because of his misrepresentations about his battery conviction and supposed completion of an anger management course, the court imposed a two level enhancement for obstruction of justice under § 3C1.1 and declined to award a reduction for acceptance of responsibility under § 3E1.1. See USSG §§ 3C1.1, 3E1.1. His adjusted offense level was calculated to be 22.

The court found that criminal history category III did not adequately reflect the seriousness of Thornberg's past criminal conduct or the likelihood that he would commit future crimes. Describing Thornberg as "a classic con man, and a crook of

long standing throughout his lifetime," the court departed upward under USSG § 4A1.3 to criminal history category V, which provides a sentencing range of 77 to 96 months for an offense level of 22, id. Ch.5, Pt.A. Thornberg was sentenced at the high end of the range, to 60 months on the wire fraud count and 36 months for money laundering, to be served consecutively. Pursuant to 18 U.S.C. § 3553(c), the district court provided a written statement of its reasons for departing from the guidelines.

On appeal, Thornberg argues that the district court erred in departing upward. First, he contends that the upward departure resulted in an unreasonable sentence and was unwarranted because the facts did not differentiate him from the typical offender falling within criminal history category III. Second, he contends that the district court improperly engaged in double counting by using the same conduct to increase his offense level and to depart upward from the guidelines. Finally, Thornberg argues that in increasing his criminal history by two categories, the district court failed to compare his criminal history with the criminal histories of other offenders at each step.[3] In reviewing a departure from the guidelines, we "ask whether the sentencing court abused its discretion." Koon v. United States, 518 U.S. 81, 91 (1996); see also United States v. Herr, 202 F.3d 1014, 1015 (8th Cir. 2000) ("We review the district court's upward departure under a unitary abuse-of-discretion standard.").[4]

---

[3]In his reply brief Thornberg raises an additional argument for the first time. He contends that the government should be estopped from supporting the upward departure because it had promised to recommend to the district court a sentence within the guideline range. We note that the plea agreement provided that the government would recommend a sentence within the guideline range calculated by the district court, and the agreement apparently said nothing about limiting the government on an appeal. Moreover, it is well settled that we will not consider an argument raised for the first time in a reply brief. Navarijo-Barrios v. Ashcroft, 322 F.3d 561, 564 n.1 (8th Cir. 2003).

[4]Congress has recently passed legislation, to become effective when signed by the president, which amends 18 U.S.C. § 3742(e) and affects the standard of appellate review for sentencing guideline issues, including departures. See PROTECT Act, S.

Section 4A1.3 permits a court to depart upward if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." USSG § 4A1.3, p.s. In this case, the record supports both the district court's conclusion that category III was insufficient and the reasonableness of the sentence imposed.

The PSR, to which Thornberg did not object, revealed that Thornberg had previously been convicted of 17 counts of mail fraud for which he was sentenced to 96 months in federal prison; had failed to appear in the courts of at least two different states after being charged with grand theft and embezzlement in South Dakota and gross misdemeanor theft in Minnesota; had been associated with a multitude of business, some owing millions of dollars to unsecured creditors; had operated a foundation that was shut down by Minnesota authorities for using fraud, misrepresentation, and deceptive practices; had claimed to have posttraumatic stress disorder from service in Vietnam even though he had never served in any branch of the military; and had used at least six false social security numbers and numerous aliases in the course of his operations. The PSR also showed that, at the time of his arrest, Thornberg was operating Bell Corporation, which falsely claimed to transact over $40,000,000 in annual business, and that he subsequently tried to deceive the court about the disposition of a prior conviction.

Thornberg argues that much of his history does not differentiate him from a

151, 108th Cong. § 401(d)(1), (2) (2003). Since the district court did not commit clear error in its fact finding [§ 3742(e)], gave written reasons for its departure [PROTECT Act sec. 401(d)(1), § 3742(e)(3)(A)], did not base its departure on an impermissible factor [id. sec. 401(d)(1), § 3742(e)(3)(B)], and did not abuse its discretion in determining that the sentence was reasonable [id. sec. 401(d)(1), § 3742(e)(3)(C); id. § 401(d)(2)], we would also affirm under the PROTECT Act. See also id. sec. 401(d)(3)(C), § 3742(f)(2).

typical category III offender. He contends that fraud has not been proven against Bell Corporation or the 50 other businesses associated with him, that the existence of an active voice mail account did not prove that he was continuing to operate Bell Corporation while incarcerated, and that several of the alleged aliases were actually just the names of prior users of his mailbox. Thornberg's argument fails to take into account that § 4A1.3 only requires that a sentencing court base a departure on *reliable information*. The facts described in the PSR were not disputed or objected to, and they represent reliable information indicating that Thornberg had been engaged in continuing fraudulent conduct and was likely to victimize others in the future if not deterred. Cf. United States v. Vagenas, 318 F.3d 819, 821 (8th Cir. 2003) (§ 4A1.3 upward departure appropriate "where there is evidence of obvious incorrigibility" (internal quotation marks omitted)). Moreover, if the district court had not departed upward, Thornberg would have received a sentence lower than his prior mail fraud sentence. That would have been contrary to the intent of the guidelines "'that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence.'" Id. (quoting USSG Ch.4, Pt.A, intro. comment.).

Thornberg also argues that the district court erred in departing upward pursuant to § 4A1.3 because his use of fake names, identifications, passports, and businesses had already been accounted for by the offense level adjustments imposed under § 2B1.1. We are not persuaded by this argument. The guidelines embody the notion that the severity of a sentence should be determined both by the seriousness of the offense (reflected by the base offense level inquiry under chapter two) and by "the offender and the need to deter him from further criminal activity" (as assessed by the criminal history score calculated under chapter four). United States v. Saffeels, 39 F.3d 833, 836 (8th Cir. 1994). In light of these dual considerations, it is permissible to use the same conduct "as the predicate both for establishing a defendant's base offense level . . . and for calculating his criminal history category." Id. This same reasoning holds true when the conduct that has been used to establish the offense level is also used to assess the need for an upward departure under § 4A1.3. See

United States v. Thin Elk, 321 F.3d 704, 708 n.3 (8th Cir. 2003) ("'[T]he court may depart from the guidelines, even though the reason for departure is taken into consideration in determining the guideline range . . . .'" (quoting USSG § 5K2.0, p.s.)). In this case, the false pieces of identification and business names were relevant both to establish Thornberg's offense level under § 2B1.1 and to determine the adequacy of his criminal history category under § 4A1.3. We therefore conclude that the district court did not engage in impermissible double counting by departing upward.

Thornberg also argues that the district court did not adequately explain why it passed over criminal history category IV when it departed from category III to V. The district court was not required to "specifically mention that it had considered each intermediate criminal history category." United States v. Collins, 104 F.3d 143, 145 (8th Cir. 1997). Instead, a court must adequately "explain and support the departure," id., and the district court did so in this case. Drawing on the PSR, it noted Thornberg's failure to reform after his prior mail fraud conviction, possession of several fake passports and false social security numbers, use of multiple aliases, association with over 50 different business names, and possible preparation to commit further fraud with Bell Corporation. The district court did not err in its application of § 4A1.3.

For these reasons and because we conclude that the district court did not err in departing upward and that its sentence was reasonable, we affirm the judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.