# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3249
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the Western |
| | * District of Missouri. |
| William Martinez, also known as | * |
| William T. Melvin, | * |
| | * |
| Defendant - Appellant. | * |
| | * |

_____

Submitted:  April 15, 2003
Filed:  August 12, 2003
_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.
_____

MELLOY, Circuit Judge.

William Martinez pled guilty to being an unlawful user of a controlled substance and a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1), (3), and 924(a)(2).  Over Martinez's objections, the district court imposed a two-level specific-offense enhancement under U.S.S.G. § 2K2.1(b)(4) because one of the two firearms was stolen, and a four-level specific-offense enhancement under U.S.S.G. § 2K2.1(b)(5) because the firearms were used in connection with another felony offense.  Martinez was sentenced to 100 months, with three years supervised release.

On appeal, Martinez alleges three points of error: (1) that imposition of the § 2K2.1(b)(4) enhancement in Martinez's case violated his Fifth Amendment due process rights because the government did not establish that he knew the firearm at issue was stolen; (2) that the government failed to establish a factual predicate for the § 2K2.1(b)(5) enhancement; and (3) that the district court impermissibly double-counted when it imposed enhancements under both U.S.S.G. § 2K2.1(b)(4) and § 2K2.1(b)(5). We affirm in part and reverse in part.

## I.

In a superseding indictment, the government charged Martinez with two counts of being an unlawful user of a controlled substance and a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1), (3), and 924(a)(2). Martinez pled guilty to Count 2, which relates to Martinez's conduct and arrest on October 18, 2001. The government dismissed Count 1, which involved a subsequent run-in with authorities on January 21, 2002, wherein Martinez was arrested while attempting to steal a car. The district court calculated Martinez's sentence based solely on Count 2, and our factual recitation of the relevant offense conduct is drawn from the presentence report.

On October 18, 2001, a citizen reported to police that she had found a black bag on a road near her residence in Rogersville, Missouri. An officer responded to the call, and, on opening the bag, discovered two credit cards in the name of Carla D. Wingo, a .22 caliber pistol, and a 9 millimeter pistol. Also in the bag were a social security card belonging to William T. Martinez, a scrap book, and miscellaneous papers from the Missouri Department of Corrections belonging to Martinez.

Not far from where the bag was located, the officer found Martinez standing alongside his truck. During the ensuing conversation, Martinez told the officer that

he was missing a bag that contained his papers, identification, and a scrapbook. The officer noticed clothing and tools in Martinez's truck. The officer contacted the local sheriff's office and was told that Carla Wingo's residence had recently been burglarized and that a number of the items in Martinez's truck, as well as the credit cards and the .22 caliber pistol, had been stolen during the burglary. As a result, Martinez was arrested for possession of stolen property.

The district court calculated Martinez's total offense level at 23, including the two- and four-level specific offense enhancements challenged in this appeal. This score, combined with Martinez's Category VI criminal history, resulted in a sentencing range of 92 to 115 months. The district court sentenced Martinez to 100 months in prison, and three years supervised release. This appeal timely followed.

II.

We review the district court's factual findings for clear error and its legal conclusions concerning the application of the sentencing guidelines de novo. United States v. Scolaro, 299 F.3d 956, 957 (8th Cir. 2002); United States v. Rohwedder, 243 F.3d 423, 425 (8th Cir. 2001). Martinez's constitutional claim is reviewed de novo. United States v. Johnson, 56 F.3d 947, 953 (8th Cir. 1995).

A.    U.S.S.G. § 2K2.1(b)(4):

We affirm the district court's imposition of the two-level enhancement under § 2K2.1(b)(4),[1] and reject Martinez's constitutional challenge. The application notes to § 2K2.1 explain that the enhancement under subsection (b)(4) for a stolen firearm "applies whether or not the defendant knew or had reason to believe that the firearm

---

[1] U.S.S.G. § 2K2.1(b)(4) states, "If any firearm was stolen, . . . increase by 2 levels.").

was stolen . . . ." U.S. Sentencing Guidelines Manual § 2K2.1, cmt. n.19 (2002). Martinez contends that imposition of this type of strict liability enhancement violated his Fifth Amendment due process rights, and that the government was constitutionally required to prove that he knew the firearm was stolen. Although we have held on several occasions that § 2K2.1(b)(4) does not include a knowledge requirement, we have never explicitly resolved the issue on constitutional grounds. See United States v. Hernandez, 972 F.2d 885, 888 (8th Cir. 1992) (affirming enhancement without reference to constitutional question); United States v. Amerson-Bey, 898 F.2d 681, 683 (1990) (affirming enhancement but expressly declining to reach constitutional question because the defendant had not raised his constitutional claim before the district court); United States v. Anderson, 886 F.2d 215, 216 (8th Cir. 1989) (affirming enhancement without reference to constitutional question).

We now join every other circuit to have addressed the issue and explicitly hold that § 2K2.1(b)(4) does not violate the constitution.[2] We agree that no due process concerns are implicated by the lack of a scienter requirement because "the upward adjustment for possession of a stolen firearm does not stand alone as an independent crime but is part of a sentencing court's quest to formulate a proper sentence." Singleton, 946 F.2d at 26, quoted in Murphy, 96 F.3d at 849. See also Sanders, 990 F.2d at 584 (distinguishing between strict liability crimes and strict liability enhancements). As such, the enhancement does not alter the statutory maximum penalty, negate the presumption of innocence or alter the burden of proof for the underlying offense. Goodell, 990 F.2d at 499-500. "Further, the government has a legitimate interest in punishing possession of a stolen firearm and placing the burden

_____

[2] See United States v. Murphy, 96 F.3d 846, 848-49 (6th Cir. 1996); United States v. Griffiths, 41 F.3d 844, 845-46 (2d Cir. 1994); United States v. Richardson, 8 F.3d 769, 770 (11th Cir. 1993); United States v. Sanders, 990 F.2d 582, 584 (10th Cir. 1993); United States v. Goodell, 990 F.2d 497, 499-501 (9th Cir. 1993); United States v. Schnell, 982 F.2d 216, 219 (7th Cir. 1992); United States v. Mobley, 956 F.2d 450, 452, 459 (3d Cir. 1992); United States v. Singleton, 946 F.2d 23, 27 (5th Cir. 1991); United States v. Taylor, 937 F.2d 676, 682 (D.C. Cir. 1991).

upon one who receives a firearm to ensure that the possession is lawful." Griffiths, 41 F.3d at 845 (citation omitted).

B.    U.S.S.G. § 2K2.1(b)(5):

U.S.S.G. § 2K2.1(b)(5) provides for a four-level enhancement if the defendant used or possessed any firearm "in connection with another felony offense." Martinez argues that the enhancement is not warranted in his case because the government has not demonstrated that the firearms at issue, the .22 caliber and 9 millimeter pistols, were used or possessed in connection with any other felony. We agree that the government has failed to meet its burden on this issue.

In the plea agreement, the government stipulated that it did "not have any evidence that Defendant was committing another felony offense at the time of his apprehension on October 18, 2001, during which he possessed the firearms in question other than receipt/possession of stolen property." The government contends that Martinez's possession of stolen credit cards (which were in the abandoned bag along with Martinez's identification papers) and other stolen items on his person and in his truck at the time of his arrest satisfies the "other felony" requirement of § 2K2.1(b)(5). Under Missouri law, however, possession of stolen property is a class A misdemeanor unless the property involved has a value of one hundred fifty[3] dollars or more, in which case it is a class C felony. Mo. Ann. Stat. § 570.080 (2002).

The government concedes that neither the plea agreement, the presentence report, nor the transcript of the sentencing hearing enumerates, or values, the allegedly stolen items in Martinez's possession at the time of his arrest. The government argues, however, that possession of stolen credit cards is, in itself, a

_____

[3] In 2002, the threshold amount for felony classification was raised to five hundred dollars. Martinez's charged conduct occurred on October 18, 2001, prior to the statutory amendment.

felony offense. The government reasons that because Missouri makes it a felony to steal a credit card, Mo. Ann. Stat. § 570.030.3(3)(c), we can conclude that it is a felony to possess a stolen credit card despite the statute's omission of language to that effect. We decline to read language into Missouri's criminal code that was not clearly intended by its legislature. Cf. e.g., N.Y. Penal Law § 165.45 (2003) (felony possession of stolen property applies where the value of the property exceeds one thousand dollars or, *inter alia*, the property consists of a credit card); Ohio Rev. Code Ann. § 2913.71 (elevating possession of stolen property to a felony where the property involved is a credit card); N.M. Stat. Ann. § 30-16-27 (2002) (establishing a distinct offense of possession/retention of a stolen credit card).

Missouri's theft and possession of stolen property statutes are not drafted with parallel construction and we will not force a parallel interpretation on the two provisions. Compare Mo. Ann. Stat. § 570.030 with Mo. Ann. Stat. § 570.080. Although the theft statute, like the possession statute, includes a one hundred fifty dollar felony threshold, the theft statute, in addition, enumerates more than a dozen specific items, the theft of which merits felony status regardless of value. See Mo. Ann. Stats. § 570.030. These include the theft of any credit card; any "horse, mule, ass, cattle, swine, sheep, or goat; any United States national flag; or any "pleading, notice judgment or any other [judicial] record." See id. There are many reasons why the legislature may have determined that theft of these items should be punished more severely than others, and those reasons do not necessarily apply where all that is at issue is possession of the stolen items.

The government has directed us to nothing in the Missouri criminal code or legislative history to suggest that Missouri considers theft of property and possession of stolen property inherently equivalent crimes. Nor has the government demonstrated that under Missouri law crimes involving credit cards are categorically treated as felonies. To the contrary, the *use* of a stolen credit card to obtain services or property is a class A misdemeanor unless the value of the property or services at

issue exceeds one hundred fifty dollars. Mo. Stat. Ann. § 570.130; see also Mo. Stat. Ann. § 570.135 (fraudulent procurement of a credit card or procurement of personal identifying information of another person used to fraudulently obtain a credit card is a class A misdemeanor). Given this, we cannot conclude that the legislature intended to implicitly confer felony status to possession of a stolen credit card.

For imposition of U.S.S.G. § 2K2.1(b)(5), the government was required to demonstrate that Martinez possessed the firearms charged in Count 1 in connection with another felony offense. Here, the alleged other felony offense was possession of stolen property. There is nothing in the record to establish that the stolen property in Martinez's possession on October 18, 2001 exceeded Missouri's statutory felony threshold, and thus the four-level enhancement should not have been imposed.[4]

Finally, we briefly address, and reject, the government's suggestion at oral argument that we recalculate Martinez's sentence using relevant conduct from Count 1, the dismissed count, and that in so doing we could reach the same sentence. The government posits that consideration of Count 1 would be appropriate because the defendant did not object to the offense conduct on that count as set out in the presentence report. We decline to take this approach. Although we may affirm the district court on any basis supported by the record, it is clear in this case that, with regard to sentencing, both parties, and the district court, were focused on the conduct recited in Count 2, the October 18, 2001 incident. There is no mention of the facts underlying Count 1 in either the plea agreement or the sentencing transcript. Cf. United States v. Juan Martinez, 258 F.3d 760, 761 (8th Cir. 2001) (noting that the plea agreement provided that the defendant "would plead guilty to Count 1 and that Counts 2, 3, 4, and 5 would be considered relevant conduct"). Under these circumstances, we will not recalculate Martinez's sentence based on factors not considered relevant by the court or parties at the trial level.

---

[4] Given our conclusion that § 2K2.1(b)(5) was inapplicable in this case, we need not address Martinez's double counting challenge.

III.

In sum, we affirm the district court's imposition of the two-level enhancement under U.S.S.G. § 2K2.1(b)(4), and reverse with regard to imposition of the four-level enhancement under U.S.S.G. § 2K2.1(b)(5). The case is remanded to the district court for re-sentencing without the U.S.S.G. § 2K2.1(b)(5) four-level enhancement.

A true copy.

Attest:

U.S. COURT OF APPEALS, EIGHTH CIRCUIT.