_____

No. 95-3048
_____

United States of America,            *
                                        *
      Plaintiff - Appellee,   * Appeal from the United States
                                          * District Court for the
     v.                      * District of Minnesota.
                                          *
Dennis M. Forcelle,            *
                                        *
      Defendant - Appellant.   *


_____

Submitted:  February 16, 1996

Filed:  June 24, 1996
_____

Before McMILLIAN, LAY, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.


Dennis Forcelle appeals his convictions on one count of mail fraud, 18 U.S.C. § 1341, and six counts of interstate transportation of monies obtained by fraud, 18 U.S.C. § 2341.  He argues that his convictions should be reversed because the district court abused its discretion in admitting evidence and in instructing the jury.  We reverse and remand for retrial.

In 1967, Forcelle co-founded RMS Company.  RMS started as a general machine shop and developed expertise as a manufacturer of precision parts for the aerospace and medical industries.  In 1982, Cretex bought RMS for about four and one-half million dollars.  Cretex retained Forcelle as president to run the company.

Forcelle was charged in an eleven-count indictment with mail fraud and interstate transportation of funds obtained by fraud. The government alleged that Forcelle used RMS monies to pay for a portion of a drag racing chassis and a portion of a beach-front house in New Jersey. The first ten counts of the indictment involved five RMS checks, totalling $191,000, used to pay for about one-third of the cost of constructing the New Jersey home. Count 11 involved two RMS checks, totalling $37,000, used to buy the drag racing chassis. Forcelle admitted that he was responsible for the deceptive invoices used to access RMS money to pay for the home and the racing chassis, but he denied any criminal intent.

Forcelle explained that he used the RMS funds to pay for the New Jersey home because he intended to use the home as a base to expand the company's East Coast market presence. Forcelle believed that the home would benefit RMS and that RMS would use the home to entertain customers, to hold meetings, and to reward RMS employees. He explained that he did not tell Cretex of his plans for the New Jersey residence because Cretex would be too short-sighted to appreciate the value of such a purchase. Forcelle planned to eventually tell Cretex about the house, believing that "after there had been a season's use of the home, [Cretex] would see the advantages of it and there wouldn't have been a problem." Similarly, Forcelle admitted that he had a false invoice created to purchase the race car chassis, but that he felt it appropriate for RMS to share some of the cost because the racing operation had been used to promote RMS to its customers, employees, and suppliers.

At trial, the government produced evidence that Forcelle stole platinum scrap from RMS Company and bribed an official at Boeing Company. Forcelle denied these allegations. The government also introduced evidence that Forcelle had improvements made to his house and the homes of two other RMS employees at RMS's expense.

Forcelle objected to the admission of this evidence, arguing

that evidence of other crimes is inadmissible under Federal Rule of Evidence 404(b).  The district court admitted evidence about the platinum and home improvements as res gestae evidence, evidence of other criminal activity for the purpose of providing the context in which the charged crimes occurred.

During trial, outside the presence of the jury, the district judge made several observations about the admission of the res gestae evidence.  For example, the judge stated:  "[W]e are now off into all kinds of things, and I think both counsel are off into things that don't seem to be very relevant to this case."  Later, the judge expressed concern that "there has been a lot of evidence introduced . . . that doesn't seem . . . to have direct bearing on the evidence or on the indictment."  Finally, the judge stated that "these other areas, like platinum, have sort of overtaken the evidence that really relates to the mail charges."  The judge asked the government and the defense to propose a limiting instruction for the jury concerning the res gestae evidence specifically the evidence about the platinum and home improvements.  The court instructed the jury:

> Evidence or testimony that the defendant may have been involved in other criminal activity while president of RMS is not evidence or proof that he committed the offenses charged in the indictment.  Such testimony has been allowed for the limited purpose of assisting you in understanding the time, place and circumstances of the acts which form the basis of the offenses charged in the indictment.

During jury deliberations the jury sent several questions to the court.  The jury asked:  "Does the deceitful diversion of RMS funds, for purposes intended to be of immediate and/or future financial benefit to RMS, constitute `intent to defraud?'"  The court answered:  "This question must be answered by you by applying the law given in the instructions to the facts you have found.  It

-3-

is the jury's duty to answer this question." The jury found Forcelle guilty on one of the five counts of mail fraud and all five counts of interstate transportation of money obtained by fraud in connection with the New Jersey home. The jury convicted Forcelle on the count of interstate transportation of money obtained by fraud in connection with the racing chassis.

Forcelle's presentence investigation report originally included the platinum loss and home improvement expenditure as relevant conduct. See U.S.S.G. § 1B1.3(a)(2) (Nov. 1995). The district court held that the losses attributable to the theft of platinum and improvements to employees' homes should be stricken from the report. The court reasoned that the uncharged acts, particularly the theft of platinum, were not similar to the acts of creating false invoices as charged in the indictment. The court specifically found that the theft of platinum was not part of the same course of conduct or part of a common scheme or plan. The court also pointed out that the value of the improvements to the employees' homes, to the extent that they constituted relevant conduct, did not affect the loss calculation. The district court sentenced Forcelle to twenty-seven months for the mail fraud count and a concurrent twenty-seven month sentence on the remaining counts. Forcelle appeals.

Forcelle first argues that a new trial is warranted because of the district court's errors in admitting the evidence about the stolen platinum and home improvements. He also argues that the government failed to establish a factual basis to establish any wrongdoing for these allegations. Finally, he contends that the court erred by not giving a limiting instruction at the time the government introduced the evidence and by denying Forcelle's proposed jury instruction about the evidence.

We review the district court's evidentiary rulings for an abuse of discretion. United States v. Ball, 868 F.2d 984, 987 (8th

Cir. 1989).

In general, evidence of crimes by the defendant, not charged in the indictment, are not admissible. Fed. R. Evid. 404(b) ("[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith"); United States v. Clemons, 503 F.2d 486, 489 (8th Cir. 1974). However, evidence of other crimes is admissible for the purpose of providing the context in which the crime occurred. We have sometimes called this evidence "res gestae" or "intrinsic" evidence.[1] United States v. Moore, 735 F.2d 289, 292 (8th Cir. 1984). We have explained that when "evidence of other crimes is `so blended or connected, with the one[s] on trial as that proof of one incidentally involves the other[s]; or explains the circumstances thereof; or tends logically to prove any element of the crime charged,' it is admissible as an integral part of the immediate context of the crime charged." United States v. Bass, 794 F.2d 1305, 1312 (8th Cir.) (quoting United States v. Derring, 592 F.2d 1003, 1007 (8th Cir. 1979)), cert. denied, 479 U.S. 869 (1986). Under Rule 404(b), evidence of other crimes is also admissible as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."

The government argues that the district court correctly admitted the platinum evidence and the home improvement evidence because this evidence constitutes an integral part of a series of Forcelle's criminal acts defrauding RMS. Alternatively, the government argues that the evidence is admissible as proof of

---

[1]The district court also called the evidence "res gestae" evidence, but some commentators and courts have disapproved of that term, calling the term useless or unsatisfactory. See McCormick on Evidence § 190 (John William Strong ed., 4th ed. 1992). Some courts have substituted phrases such as "same transaction evidence" or "`complete story' principle" for the term res gestae evidence. See id.

motive, preparation, opportunity and intent under Federal Rule of Evidence 404(b).

Forcelle's alleged platinum stealing is entirely distinct from the charges of mail fraud and interstate use of funds obtained by fraud, as the district judge observed. The charged counts focused on Forcelle's purchase of a house and a drag racing chassis. The allegations that Forcelle stole platinum from RMS is unrelated to the charged counts. Proof that Forcelle committed mail fraud or illegally transported monies obtained by fraud when he bought the race car chassis or New Jersey home does not incidentally involve proof that Forcelle also stole platinum from RMS. Indeed, the government presented its proof about the platinum primarily from four witnesses, Geraldine Grace, David Thompson, Michael Potter, and Sharon Hanson, although numerous other witnesses also testified about the platinum during the course of the trial. These four witnesses were all employees of RMS and testified only about their involvement and Forcelle's involvement with the platinum. Their testimony did not deal with the house or the car. After testimony about the charges in the indictment, the government's case turned to the issue of platinum, and about three quarters of the testimony during the first four days of the trial dealt with this issue.

In its brief, the government contends it introduced only "limited" evidence about the platinum. The government downplays its evidence, stating it consisted only of "several witnesses" and "very limited questions." This characterization does not square with the trial record. The government opened up the platinum issue in its opening statement. Then in the early days of trial the government's witnesses provided detailed information to the jury about how RMS bought, used, inventoried, stored, and disposed of platinum. There was extensive testimony about record keeping and safekeeping procedures in connection with the platinum. Several days of the trial were devoted solely to testimony about the platinum allegations. Donald Schumacher, the chief financial

officer for Cretex, testified that based on his review of RMS's records there was approximately 2,000 ounces of platinum "placed aside" for Forcelle, and that the average price of platinum was $400 an ounce.

In those cases in which we have approved the use of other crimes evidence as an integral part of the context of the crime charged, the other crime evidence was closely or inextricably intertwined with the charged crime.  See, e.g., United States v. Severe, 29 F.3d 444, 447 (8th Cir. 1994) (evidence of drug delivery "inextricably intertwined" with the conspiracy charge), cert. denied, 115 S. Ct. 763 (1995); Bass, 794 F.2d at 1313 (evidence was "closely intertwined with the entire criminal transaction").  We have often explained the other crime evidence "completes the story" or provides a "total picture" of the charged crime.  See, e.g., Ball, 868 F.2d at 988 (evidence gave jury a "total picture" of defendant's state of mind).

The government's general contention that the district court did not abuse its discretion in admitting the platinum evidence because the evidence was "part of a series of criminal acts serving to defraud the company and misappropriate resources" is simply a repetition of the standard for admitting evidence of other crimes and does not explain how the evidence meets the standard for admission of such evidence.  The government charged Forcelle with specific instances of defrauding RMS by creating false invoices to pay for part of the New Jersey home and the race car chassis.  Evidence that Forcelle stole platinum does not complete the story of the charged crimes.  See, e.g., United States v. McGuire, 45 F.3d 1177, 1188 (8th Cir.), cert. denied, 115 S. Ct. 2558 (1995); United States v. Two Eagle, 633 F.2d 93, 95-96 (8th Cir. 1980).  The evidence about the platinum is evidence showing a discrete example of Forcelle's misappropriation of company resources, and provides no additional context for the crimes charged.  See Moore, 735 F.2d at 292.

Our conclusion that the platinum evidence is not admissible as res gestae evidence is solidified by the district court's ruling on Forcelle's motion to strike portions of his presentence report. The court ruled that the platinum evidence did not qualify as "relevant conduct," specifically finding that the evidence was not part of the same course of conduct.

Even if the platinum evidence is not admissible as res gestae evidence, the government contends it is admissible under Rule 404(b) for the purpose of proving motive, preparation, opportunity and intent. Federal Rule of Evidence 404(b) allows the use of evidence about "other crimes, wrongs, or acts" if it has a bearing on any relevant issue other than the defendant's propensity toward criminal activity. United States v. Powell, 39 F.3d 894, 896 (8th Cir. 1994); United States v. Kern, 12 F.3d 122, 124 (8th Cir. 1993).

To admit Rule 404(b) evidence for purposes other than to prove propensity, the evidence must:

> (1) be relevant to a material issue raised at trial, (2) be similar in kind and close in time to the crime charged, (3) be supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not have a prejudicial value that substantially outweighs its probative value.

Id. at 124-25.

The evidence that Forcelle stole platinum from RMS fails the "similar in kind" element of this test. Evidence that Forcelle stole platinum from RMS is different from the charges that Forcelle caused false invoices to be created in order to obtain RMS funds to service his lifestyle. Cf. United States v. Sykes, 977 F.2d 1242, 1246 (8th Cir. 1992) (crimes were virtually identical in nature and reasonably close in time). Again, our conclusion that the evidence is not similar in kind to the charged crimes is supported by the

district court's finding in sentencing that the platinum evidence did not constitute relevant conduct. In rejecting the evidence for the purpose of sentencing, the court specifically found that the evidence was not similar to the acts of creating false invoices and was not part of the same course of conduct or relevant to proving a common scheme or plan.

Finally, we cannot conclude that the error in admitting the platinum evidence was harmless. See Clemons, 503 F.2d at 491 ("[t]he danger of prejudice to the defendant due to admission of evidence of other crimes is always great."). As discussed, there was substantial testimony about the missing platinum. See id. (noting that considerable time at trial was spent on the incident). The total estimated loss to RMS from the missing platinum was $800,000. This alleged loss was substantially greater than the losses attributed to the race car chassis ($37,000) and the beach-front home ($191,733). The government does not challenge Forcelle's statement on appeal that approximately 900 pages of the approximately 2,000 page trial transcript dealt with evidence about the platinum allegations. Our examination of the record demonstrates that in the first four days of the trial, some 620 of 809 pages of transcript dealt with this subject. Further study of the transcript reveals that 928 of the 1982 total pages of the trial transcript dealt with testimony concerning the platinum issue. The government blames the substantial testimony on Forcelle's extensive cross-examination. Although the amount of the testimony is in large part due to Forcelle's cross-examination of the government's witnesses, the government brought out the allegations of the missing platinum in its opening statement and called multiple witnesses, beginning with the early days of the trial, to develop the evidence. Forcelle cannot be blamed for failing to sit idle in the face of the damning evidence produced by the government. Under these circumstances, we cannot say that the platinum evidence did not influence the jury's verdict. The district judge's numerous comments during the course of the trial

about the significant time spent on the platinum issue and the concern evident in these comments underscore our conclusion concerning the importance of this testimony on the jury's verdict. We therefore reverse and remand for a new trial.[2]

The evidence about the home improvements is a much closer question. As he did with the home and the racing car, Forcelle falsified invoices to pay for the home improvements, and he justified the expenditures as legitimate business expenses. Forcelle admitted that he authorized the use of RMS funds to pay for the home improvements, just as he admitted responsibility for the use of RMS funds for the racing chassis and the beach-front home. Forcelle explained that he believed that it was appropriate to use RMS funds because it was for the benefit of RMS, the same explanation he used for the race car chassis and home purchases. Thus, the evidence that Forcelle, on other occasions, used company funds as he saw fit is more closely intertwined to the charged crimes and is relevant to showing Forcelle's intent. See Bass, 794 F.2d at 1312; Fed. R. Evid. 404(b). The district court did not abuse its discretion in admitting the evidence about the home improvements.

We reverse Forcelle's convictions and remand the case for a new trial.

---

[2]In light of this conclusion, we need not decide Forcelle's other ground for reversal, that the court erred in giving a supplemental instruction to the jury after the jury submitted a question to the court, as the issue is unlikely to recur on retrial.

A true copy.

        Attest:

                CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.