United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 97-2837

_____

| | |
|---|---|
| United States of America,      * | |
| * | |
| Appellee,      * | |
| * | Appeal from the United States |
| v.      * | District Court for the |
| * | Western District of Missouri. |
| Elbert Myron Riebold, also known as      * | |
| Mike Riebold,      * | |
| * | |
| Appellant.      * | |

_____

Submitted: December 9, 1997
Filed: February 5, 1998

_____

Before BOWMAN, FLOYD R. GIBSON, and HANSEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

A jury convicted Elbert Myron Riebold, also known as Mike Riebold, of money laundering, wire fraud, conspiracy, and interstate transportation of stolen money. Following the jury's verdict, the District Court[1] sentenced Riebold to 210 months of incarceration and ordered that he pay $2,666,300 in restitution. This appeal follows.

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

Riebold claims that the District Court erred in admitting evidence of his prior convictions; that the conspiracy conviction must be reversed because the single conspiracy charged in the indictment was not proven; and that he was prejudiced by the government's cross-examination of a certain witness. He also argues that the court abused its discretion in ordering him to pay an excessive amount of restitution. We find no error and therefore affirm in all respects.

I.

From 1988 until 1995, Riebold took money from investors for the development of worthless properties. With the help of his brother, Hubert Riebold, and his business associate, Dr. David Thomasson, Riebold secured more than $2,500,000 in investments for interests in various gold and copper mining operations. In the end, however, it was only the investors who were mined, for the mining operations were non-existent and the investors received absolutely no return on their investments.

For their fraudulent scheme, both Mike and Hubert Riebold were named in a twelve-count indictment. Dr. Thomasson was named as an unindicted co-conspirator.[2] Mike and Hubert were tried together and convicted on various counts of interstate transportation of stolen money, money laundering, and fraud. Further, the jury convicted Mike Riebold of conspiracy, but deadlocked on Hubert Riebold's conspiracy charge.

---

[2]The Government has represented to this Court that in July 1997, Dr. Thomasson pleaded guilty to conspiring with Mike Riebold and Hubert Riebold to defraud investors in connection with the mining ventures between 1988 and 1995.

II.

## A. Prior Fraud Convictions

Riebold first argues that the District Court erred in admitting evidence of his prior fraud convictions. In 1975, Riebold was convicted on seventy-two counts of fraud, including mail fraud, securities fraud, misapplication of bank funds, wire fraud, and interstate transportation of property obtained by fraud and conspiracy. For these convictions, Riebold was sentenced to five years in prison to be followed by five years of probation. In 1977, Riebold was again convicted of fraud, this time for wire fraud and for use of the mail for sale and delivery of unregistered securities. Riebold was sentenced to five years of incarceration to be served concurrently with the 1975 sentence. Both fraudulent schemes for which Riebold was convicted involved securing investors for bogus mineral development companies.

The District Court allowed the prior fraud convictions to be admitted into evidence by permitting the government to ask witnesses, who had invested in the current failed scheme, whether they were aware of Riebold's prior fraud convictions at the time of their investments. Of those witnesses who replied that they were not aware of Riebold's two prior convictions at the time they invested, the government inquired whether they would have invested had they known.

Initially, the government sought to admit the prior convictions as extrinsic evidence under Federal Rule of Evidence 404(b). The government later asserted that the prior convictions should be admitted as substantive evidence of the crimes charged under the theory of res gestae. Under this theory, the government argued that Riebold's concealment of his prior fraud convictions were part of the charged crime itself. The District Court agreed and allowed the questioning to continue under the theory of res gestae. We review the District Court's ruling for abuse of discretion. See United States v. Forcelle, 86 F.3d 838, 841 (8th Cir. 1996).

-3-

Under the theory of res gestae, evidence of prior crimes can be admitted when the prior crime is "so blended or connected, with the one[s] on trial as that proof of one incidentally involves the other[s]; or explains the circumstances thereof; or tends logically to prove any element of the crime charged." Id. (quoted cases omitted) (alterations not ours). When evidence is admitted under res gestae, Rule 404(b) is not implicated. See United States v. LeCompte, 108 F.3d 948, 952 (8th Cir. 1997). Riebold argues that the evidence is not admissible under the res gestae theory because the concealment of his prior convictions was neither connected to nor an element of the fraud for which he was charged.

The federal wire fraud statute under which Riebold was charged reads in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted . . . any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined [or imprisoned, or both].

18 U.S.C. § 1343 (1994). This Court has construed § 1343 to forbid both schemes to defraud, whether or not any specific misrepresentations have been made, and to obtain money by false or fraudulent pretenses, representations, or promises. See United States v. Clausen, 792 F.2d 102, 104 (8th Cir.), cert. denied, 479 U.S. 858 (1986).

In trying to prove that Riebold obtained money by false representations, the government questioned investor Doug Collins about whether he had ever asked Riebold about Riebold's criminal past. See Trial Tr. at 370. Collins testified that, before he had invested in the scheme, he had asked Riebold whether Riebold had ever been in prison. See id. Collins testified that, in response, Riebold stated that he had never been in prison. See id. Also, the government asked investor Kent Beus whether he had ever

confronted Riebold about his prior fraud convictions. See id. at 244. Beus testified that he had confronted Riebold, and in response Riebold told Beus about only one fraud conviction. See id. Beus further testified that he would not have invested had he known about the second fraud conviction. See id. Thus, Riebold falsely represented his past to both Collins and Beus at the time they were considering investing.

Riebold reminds us that he never actually lied to the other investors about his past; he just chose not to share the information with them. Riebold argues that the questioning of these investors about his prior convictions was therefore improper because the mere concealment of the convictions was not an element of the fraud. But under § 1343 "a scheme to defraud need not include false representations." Clausen, 792 F.2d at 105.

We would be reluctant to hold that a convicted felon always must disclose his past to those with whom he deals. We do not so hold in this case. But here Riebold had twice been convicted of fraud, the prior convictions were for conduct very similar to the fraudulent conduct in which he was engaged, and Riebold knew the victims were making substantial investments based in part upon their trust in his character and integrity. In these circumstances, the fact that Riebold concealed his past went directly to whether he intended to devise a scheme to defraud under 18 U.S.C. § 1343. In addition, investors Bill Lee and Connis Gilbert testified that they would not have invested any money in Riebold's operations had they known about his prior convictions. See Trial Tr. at 71, 524. Thus, Riebold's concealment of his prior convictions was an important part of the scheme; otherwise, investors would have been hard to come by. Evidence of Riebold's prior fraud convictions was properly admitted under the res gestae theory because it proved an element of the crime charged--that Riebold obtained money by false pretenses.

## B. Prosecutorial Misconduct

Riebold next argues that the manner in which the government questioned witness Charles Pursley constituted prosecutorial misconduct. On cross examination, the government sought to question Pursley about Riebold's involvement in the swindle of an Oklahoma bank named "Homestead." Riebold's counsel objected to the questioning, and counsel for both sides approached the bench. In a sidebar conference, the District Court instructed the government not to inquire into the "Homestead swindle case," but stated that it would allow the government to pursue questioning concerning the victims in Riebold's 1975 fraud conviction, which the government contended was related to Homestead. Trial Tr. at 1985-86. Thereafter, the government asked Pursley to review a newspaper article and asked, "Now, having read that, are you familiar with whether or not the trial out in New Mexico involved in part funds from a company known as Homestead?" Id. at 1987. Riebold's counsel asked to approach the bench, and in a sidebar conference the court instructed the government to move to another line of questioning. See id. at 1989. The government moved on, and the Homestead issue was never raised again.

We review claims of prosecutorial misconduct under a two-part test to determine whether the prosecutor's questioning was improper, and, if so, whether such questioning prejudiced the defendant's right to a fair trial. See United States v. Swanson, 9 F.3d 1354, 1360 (8th Cir. 1993). While we agree with Riebold that the government should not have mentioned Homestead in its question, we do not believe the question rises to the level of being improper.

Further, even if this question was improper, Riebold's right to a fair trial was not prejudiced. We review for abuse of discretion a district court's failure to grant a mistrial for prosecutorial misconduct and failure to give a cautionary instruction. See United States v. Warfield, 97 F.3d 1014, 1028 (8th Cir. 1996), cert. denied, 117 S. Ct.

1119 (1997). This reference to Homestead in the context of an eleven-day trial was innocuous. The District Court did not abuse its discretion.

## C. Conspiracy Theory

Riebold next contends that his conspiracy conviction must be reversed because the government proved at least two conspiracies instead of the single conspiracy charged in the indictment. The indictment alleged one conspiracy, charging Mike and Hubert with conspiring "with one another and with others" to commit the underlying offenses. Indictment at 10. Mike Riebold was convicted of conspiracy, but the jury could not reach a verdict as to Hubert Riebold on the conspiracy charge. As best we can discern from his brief, Mike Riebold claims that Dr. Thomasson, an unindicted co-conspirator, did not participate in one of the gold mining projects involved in the scheme, the Eureka mining project. Further, Mike Riebold claims that, because the jury could not reach a verdict as to Hubert's conspiracy charge, which encompassed all of the mining projects, there was no conspiracy between Mike and Hubert as to the Eureka mining project either. Riebold thus argues that there was more than one conspiracy involved in the scheme; he contends that the Eureka gold mine was a separate conspiracy because Mike Riebold conspired with neither Dr. Thomasson nor Hubert Riebold on that venture. This, according to Riebold, would require reversal under Kotteakos v. United States, 328 U.S. 750, 756-57 (1946) (reversing convictions when indictment charged one conspiracy but evidence showed multiple conspiracies).

A single conspiracy requires "'one overall agreement' to perform various functions to achieve the objectives of the conspiracy." United States v. Massa, 740 F.2d 629, 636 (8th Cir. 1984), cert. denied, 471 U.S. 1115 (1985) (quoted cases omitted). One conspiracy may exist despite the involvement of multiple groups and the performance of separate acts. See United States v. Dijan, 37 F.3d 398, 402 (8th Cir. 1994), cert. denied, 514 U.S. 1044 (1995). The issue of whether the government has proven a single conspiracy or multiple conspiracies is to be resolved by the jury since

it is a question of fact as to the nature of the agreement.  See United States v. England, 966 F.2d 403, 406 (8th Cir.), cert. denied, 506 U.S. 1025 (1992).

Viewing the record in the light most favorable to the verdict, we conclude that it was reasonable for the jury to conclude that a single conspiracy existed.  The evidence indicated that Mike Riebold conspired with others to achieve one common, overall goal--to defraud investors.  The scheme lasted from 1988 to 1995 and involved several different mines, with Riebold assuring the investors that their initial investments would "roll over" into ownership interests in the new mines.

Regarding Riebold's contention as to Dr. Thomasson, evidence was presented that Dr. Thomasson became involved in the scheme at its inception, soliciting money for the ventures beginning in 1988.  When Riebold was securing investments for the Eureka mine project, Dr. Thomasson became incapacitated by illness.  There was no evidence, however, that Dr. Thomasson ever withdrew from the conspiracy.  His illness caused only a brief cessation of activity on his part, and mere cessation of activities is not sufficient proof of withdrawal from the conspiracy.  See United States v. Lewis, 759 F.2d 1316, 1343 (8th Cir.), cert. denied, 474 U.S. 994 (1985).  A reasonable jury could have found that Dr. Thomasson was an ongoing participant for the duration of the scheme.

As to Mike Riebold's contention concerning Hubert Riebold, the fact that the jury deadlocked on Hubert Riebold's involvement in the conspiracy does not preclude the jury from finding that Mike Riebold was guilty of conspiracy.  See United States v. Boyd, 610 F.2d 521, 528 (8th Cir. 1979), cert. denied, 444 U.S. 1089 (1980) (affirmed conspiracy conviction even though co-defendant had been acquitted of conspiracy).  The government need only prove the existence of an agreement to accomplish an illegal objective, that the defendant knew of the agreement, and that the defendant intentionally joined the conspiracy.  See United States v. Agofsky, 20 F.3d 866, 870 (8th Cir.), cert. denied, 513 U.S. 909 (1994).  In this case, there was

substantial evidence presented from which the jury could have determined that a conspiracy encompassing all of the mining projects (including the Eureka mining project) existed between Mike Riebold and one or more others, notwithstanding the fact that the jury did not find Hubert Riebold guilty on the conspiracy charge.

## D. Restitution

Riebold's final argument is that the District Court erred when it ordered him to pay $2,666,300 in restitution within thirty-five months after his release from incarceration. Riebold contends that he has no funds with which to satisfy the restitution order and has no expectation of being able to satisfy the order upon his release. He complains that the District Court failed to make specific findings as to his ability to satisfy the order. We ordinarily review a district court's restitution order for abuse of discretion. See United States v. French, 46 F.3d 710, 716 (8th Cir. 1995). The government contends, however, that Riebold did not challenge the order of restitution at the time he was sentenced. We agree. Riebold did not object during his sentencing hearing when the court pronounced its order of restitution, nor did Riebold ever ask the court to make specific ability-to-pay findings. We therefore review the restitution order for plain error. See United States v. Manzer, 69 F.3d 222, 229 (8th Cir. 1995).

District courts can order restitution even though the defendant is an indigent at the time of sentencing. See Means v. United States, 961 F.2d 120, 120 (8th Cir. 1992). We do, however, encourage sentencing courts to make specific findings of fact regarding the defendant's ability to make restitution. See Manzer, 69 F.3d at 229. In fact, we recently held that a failure to make such findings constituted an abuse of discretion. See United States v. Van Brocklin, 115 F.3d 587, 602 (8th Cir. 1997). But when a defendant does not object (or request that the court make findings regarding ability to pay) at the sentencing hearing, the importance of the judge making specific

findings of fact is lessened.  See United States v. Berndt, 86 F.3d 803, 809 (8th Cir. 1996).

The Presentence Investigation Report listed every victim of Riebold's scheme along with the amount of loss sustained by each.  See Presentence Investigation Report Attachment.  The individual losses total the aggregate amount of $2,666,300, see id. at 14, and the District Court accepted this as its finding regarding the amount of loss caused to the victims by Riebold's illegal activities.  See Sentencing Hr'g Tr. at 11, 38.  We do not understand Riebold to be attacking this finding.  Rather, his argument goes only to the District Court's failure to make ability-to-pay findings.  We hold that it was not plain error for the District Court to order restitution in the amount of $2,666,300 without making specific findings concerning Riebold's ability to pay this amount.

We remind Riebold that he may assert his indigency in any future proceeding to enforce the restitution order.  See Means, 961 F.2d at 121.  "[C]onstitutional safeguards come into play at the time of enforcement, because a defendant cannot be punished by incarceration (or reincarceration) if his failure to pay restitution occurred through no fault of his own and there are alternatives to incarceration available."  Id.

Riebold claims that the District Court made several other errors regarding the restitution order.  We conclude that these claims lack merit and therefore affirm the restitution order in all respects.

III.

Finding no error, we affirm Riebold's convictions and the District Court's restitution order.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.