# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-2083

_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Michael Strong, Sr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: February 11, 2016
Filed: June 27, 2016

_____

Before SHEPHERD, BEAM, and KELLY, Circuit Judges.

_____

BEAM, Circuit Judge.

Christopher Strong was convicted of aggravated sexual abuse for assaulting his girlfriend, Fawnda Parkhurst, and forcing her to have sex with him over the course of a three-day period, during which he held her against her will. Prior to trial, Strong moved in limine to exclude evidence of a prior sexual assault he committed against

his former wife.  The district court[1] admitted the evidence under Federal Rule of Evidence 413.  Also prior to trial, Strong provided adequate notice of his intent to call an accident reconstructionist, Daniel Lofgren (the expert).  At trial, however, the judge excluded the expert's testimony.  Strong was sentenced to 360 months in prison, which included an enhancement for abduction and an upward adjustment for physical restraint.  For the reasons discussed below, we affirm.

## I.    BACKGROUND

Strong and Parkhurst began dating in November 2013.  The couple lived together with Strong's father on the Red Lake Indian Reservation in northern Minnesota.  Strong quickly became controlling and physically abusive. Between June 6 and June 8, 2014, Strong forced Parkhurst to remain in their home confined to the bedroom, where he then beat her, raped her, and threatened to kill her.  Parkhurst testified that when she tried to leave, Strong grabbed her by her hair and threw her to the floor.  She had bite marks and bruises all over her body.  Because it was graduation weekend, there were numerous visitors to the Strong house, but Parkhurst was confined in the bedroom.

On June 8, 2014, Parkhurst escaped while Strong was in the bathroom.  She ran out of the house, but Strong caught up to her.  He grabbed her and began dragging her back to the house.  Strong then pushed her in front of a moving car on the highway, and Parkhurst was severely injured.  She had a compound fracture to her leg.  The driver that hit her did not stop, but a passerby, Carla Martin, stopped to render aid. Parkhurst crawled into Martin's car; Strong also joined Parkhurst in the backseat. Red Lake Police Department Criminal Investigator Paul Smith met Parkhurst at the hospital and assisted medical staff in bringing her into the emergency room.  She told

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

-2-

Smith that Strong had pushed her in front of the car and testified that she started telling another officer, Alexandra Dow, about the sexual assault. Dow did not recall Parkhurst mentioning the sexual assault but did remember Parkhurst telling her about the events leading up to the crash. Strong was then arrested, and Parkhurst was airlifted to a hospital in Fargo, North Dakota, where she was rushed into surgery for her broken leg. Because of the emergency surgery, there was no time for a Sexual Assault Nurse Exam (SANE).

Strong was indicted and charged with aggravated sexual abuse, kidnapping, assault resulting in serious bodily injury, and strangulation. Prior to trial, Strong moved in limine to exclude evidence of a prior sexual assault on his then-wife, which the government intended to offer under Federal Rule of Evidence 413. In 2009, Strong pled guilty to assault resulting in serious bodily injury after he brutally attacked and sexually assaulted his wife, Clarissa Smith. The 2009 case is very similar to this case. Both victims were romantically involved with Strong, subjected to controlling behavior, sexually assaulted in the same fashion, and held captive for several days. Strong argued that admission of evidence of the 2009 assault was highly likely to unfairly prejudice the non-sexual-assault charges in this matter. To prevent such prejudicial spillover, the district court severed the aggravated-sexual-abuse count, which is the sole proceeding on appeal, and allowed evidence regarding the 2009 assault.

Prior to trial, Strong provided adequate, timely notice of his intent to call the expert who planned to testify that "it is not possible to determine whether or not the alleged victim was pushed in front of a moving vehicle prior to being struck by the vehicle." At trial, the district court called a sidebar, which was not recorded. The judge then excluded the expert's testimony for two reasons: (1) because the testimony would not have been helpful to the jury, and (2) because the court considered the testimony extrinsic evidence offered to impeach Parkhurst's testimony that Strong pushed her in front of the car that struck her.

The jury found Strong guilty of aggravated sexual abuse on December 18, 2014. The Presentence Report (PSR) recommended a total offense level of 40 based on the following: a base offense level of 30 under United States Sentencing Guideline (U.S.S.G.) § 2A3.1(a)(2) for criminal sexual abuse; a 4-level specific-offense-characteristic enhancement for permanent or life-threatening bodily injury pursuant to U.S.S.G. § 2A3.1(b)(4); a 4-level specific-offense-characteristic enhancement for abduction of the victim pursuant to U.S.S.G. § 2A3.1(b)(5); and a 2-level upward adjustment for physical restraint pursuant to U.S.S.G. § 3A1.3. The PSR noted that Strong had a criminal history category of III. The recommended Guidelines range was 360 months to life imprisonment. At sentencing on May 7, 2015, Strong objected to the 4-level enhancement for abduction and the 2-level adjustment for physical restraint, arguing that it was impermissible double counting. The district court overruled Strong's objections and sentenced him to 360 months' imprisonment.

Strong now appeals arguing that the district court (1) wrongly refused to curtail the introduction of prior sexual-assault evidence, (2) wrongly excluded his expert witness's accident reconstruction testimony, and (3) erred when it simultaneously applied sentencing enhancements for abduction and physical restraint because the enhancements were allegedly based on the same conduct, which constitutes impermissible double counting.

## II.    DISCUSSION

### A.    Prior Sexual Assault Under Rule 413

Strong argues that the district court wrongly refused to curtail the introduction of evidence of his prior sexual assault offered under Federal Rule of Evidence 413, which was unfairly prejudicial, and failed to properly apply Federal Rule of Evidence 403, which he claims would have resulted in the exclusion of evidence of the 2009

-4-

assault. We disagree. This court reviews evidentiary rulings for abuse of discretion. United States v. Crawford, 413 F.3d 873, 875-76 (8th Cir. 2005). We will "revers[e] only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Espinoza, 684 F.3d 766, 778 (8th Cir. 2012) (quoting United States v. Faulkner, 636 F.3d 1009, 1017 (8th Cir. 2011)).

Rule 413 states, "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). The rule allows the jury to consider the defendant's propensity to commit sexual crimes. Congress created this rule to encourage the prosecution of sexual offenders. United States v. Mound, 149 F.3d 799, 801 (8th Cir. 1998). Without probative evidence of prior sexual assaults, "credibility determinations . . . 'would otherwise become unresolved swearing matches.'" Id. (quoting 140 Cong. Rec. H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari)). Thus, "there is 'strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible.'" Crawford, 413 F.3d at 876 (quoting United States v. LeCompte, 131 F.3d 767, 769 (8th Cir. 1997)). Nonetheless, Federal Rule of Evidence 403 should also be considered to ensure that the "probative value [of the prior sexual assault is] not . . . substantially outweighed by the danger of unfair prejudice." United States v. Hollow Horn, 523 F.3d 882, 888 (8th Cir. 2008). "Federal Rule 403 . . . defines unfair prejudice as an undue tendency to suggest . . . a decision on an improper basis[,] commonly, though not necessarily, an emotional one . . . ." Mound, 149 F.3d at 802 (alterations in original).

Here, evidence of the 2009 assault admitted at trial was not unfettered. The entire Rule 413 testimony is summed up in approximately twenty-one pages of a 318-page trial transcript. The FBI agent involved in the 2009 assault case briefly described the assault, the investigation, and the victim's physical condition, using

photographs from the investigation to support his testimony. The victim, Clarissa Smith, also testified, but her testimony was cursory and unadorned. Strong argues that the district court allowed this evidence to "take over the trial" and states that this case is similar to United States v. Forcelle, where this court found that the evidence of a prior crime was improperly admitted under Rule 404. 86 F.3d 838, 842-43 (8th Cir. 1996). Forcelle was convicted of one count of mail fraud and six counts of interstate transportation of monies obtained by fraud. Id. at 839. To support the claims, the government offered evidence that the defendant previously stole platinum from his employer. Id. at 840. This case is not like Forcelle. The 2009 assault offered here was offered under Rule 413, not Rule 404.[2] Moreover, Rule 413 supersedes Rule 404's prohibition against character evidence. United States v. Gabe, 237 F.3d 954, 959 (8th Cir. 2001) (holding that Rule 413 evidence can be considered on any matter, including propensity). This case is more similar to Hollow Horn where we allowed a prior victim "to testify pursuant to Federal Rule of Evidence 413, that [the defendant] had raped her in 1988." 523 F.3d at 887. The court determined that the "testimony [was] prejudicial to [the defendant] for the same reason it [was] probative–it tend[ed] to prove his propensity to commit sexual assaults," which Rule 413 allows. Id. at 888. Although the testimony was prejudicial, it was not unfairly prejudicial. Id.

---

[2]Federal Rule of Evidence 404(b) provides:

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).

The district court also properly conducted Rule 403 balancing before allowing the prior assault evidence at trial. "The court may exclude evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In arguing there was no Rule 403 balancing performed in this case, Strong fails to acknowledge the extensive pretrial litigation. Strong filed a motion in limine and during the status conference, argued that the evidence should be excluded. The court took the issue under advisement and ruled on Strong's motion at the pretrial conference. The court specifically recognized the possibility that the Rule 413 evidence could spill over into the non-sexual-assault offenses and thus decided to sever the aggravated-sexual-abuse count. Strong argues for the first time on appeal that the court should have fashioned a different remedy, such as limiting the scope or excluding the photos. The district court took reasonable action in severing the cases and in doing so, did not abuse its discretion. Rule 413 evidence is always prejudicial, but Rule 403 only prevents *unfairly* prejudicial evidence. Gabe, 237 F.3d at 960. Here, there was no unfair prejudice other than the issue of spillover, which the court's decision to sever resolved. The district court further limited the alleged danger of the prior assault evidence by reminding the jury that although it could consider the evidence for any relevant matter, it could not convict Strong merely because he may have committed similar acts in the past. Thus, the district court did not abuse its discretion when it allowed evidence of Strong's 2009 assault conviction to be presented at trial.

## B.     Expert Testimony

Strong argues that the district court erred when it prohibited his expert from testifying at trial in regards to Parkhurst being struck by the car. We disagree. The district court excluded the expert's testimony for two reasons: (1) because the testimony would not have been helpful to the jury, and (2) because the court considered the evidence extrinsic evidence offered to impeach Parkhurst's testimony

that Strong pushed her in front of the car that struck her. "The exclusion of expert testimony is a matter committed to the sound judicial discretion of the trial judge, and we will reverse only for an abuse of that discretion." United States v. Kime, 99 F.3d 870, 883 (8th Cir. 1996).

"Criminal defendants have a fundamental right to present the testimony of witnesses in their defense . . . ." United States v. Turning Bear, 357 F.3d 730, 733 (8th Cir. 2004). However, there is no absolute right for criminal defendants to call every witness. Richardson v. Bowersox, 188 F.3d 973, 980 (8th Cir. 1999). A defendant's right to present witness testimony is limited by "other legitimate interests in the criminal trial process." United States v. Scheffer, 523 U.S. 303, 308 (1998) (quoting Rock v. Arkansas, 483 U.S. 44, 55 (1987)). Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Even when the requirements of Rule 702 are met, however, "[t]he court may exclude [the] evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The district court has "broad discretion" to determine the reliability of expert testimony and conduct Rule 403 balancing. Kime, 99 F.3d at 883 (quoting United States v. Blade, 811 F.2d 461, 465 (8th Cir. 1987)).

-8-

Strong's expert-witness testimony was properly excluded for several reasons. First, it was not helpful as required by Rule 702. The expert intended to testify that it was impossible to determine if Parkhurst was actually pushed in front of the car. This is an aggravated sexual abuse case; thus, it is irrelevant whether Strong pushed Parkhurst or whether she was simply running from Strong when she was hit. The only issue is whether Strong sexually abused her. Evidence of the crash was included in this case to complete the story of the three-day assault. "A jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decisions in a void–without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." United States v. Moore, 735 F.2d 289, 292 (8th Cir. 1984). Evidence of the crash was also offered to explain the lack of forensic evidence in this case, specifically, why no SANE was performed at the hospital. When Parkhurst arrived at the hospital she was immediately rushed into emergency surgery for the compound fracture in her leg.

Second, although not discussed by the district court, Federal Rule of Evidence 403 weighs against including the expert testimony in this case. Evidence about how Parkhurst ended up in front of the car has minimal probative value. The government presented evidence that Strong kept Parkhurst captive for three days, beat her, sexually assaulted her, and threatened her life. When she finally escaped, she was hit by a car. Whether Strong pushed her was relevant, as mentioned above, to complete the story and explain the lack of evidence; but because Strong was on trial only for sexual abuse, the relevance was minimal. Expert testimony on such a small point that was not an element of the crime was not necessary.

Strong suggests that the evidence should have been admitted because it contradicted Parkhurst's testimony. However, Strong's attorney properly cross-examined Parkhurst, raised questions about her motive and credibility, and introduced evidence of a prior civil judgment for fraud. The defense also provided testimony of several witnesses that contradicted Parkhurst's testimony about being confined to the

bedroom. Most importantly, an expert opinion offered for the purpose of bolstering impeachment is not helpful to the jury and is not a proper basis for admission of expert testimony. See Fed. R. Evid. 702.

The district court suggested that the expert testimony was excludable under Federal Rule of Evidence 608(b), which states that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). Although the sole purpose of the expert's testimony was to undermine Parkhurst's credibility, we agree with both parties that Rule 608(b) does not apply to this testimony. The expert's testimony would have cast doubt on Parkhurst's assertion that Strong pushed her. It would not have "prove[d] specific instances of [Parkhurst's] conduct" or "attack[ed] or support[ed her] character for truthfulness." Id. The district court's reasoning does, however, demonstrate why the evidence was not proper under Rule 702. The testimony served no real purpose related to the aggravated sexual assault case, and it would not have assisted the jury in reaching a conclusion. Thus, the district court did not abuse its discretion by excluding the expert's testimony.

## C.    Sentencing

Lastly, Strong argues that this case should be reversed and remanded for resentencing because the district court committed impermissible double counting by simultaneously applying sentencing enhancements for abduction and physical restraint based upon the same conduct. We disagree.

"Double counting occurs when 'one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.'" United States v. Hipenbecker, 115 F.3d 581, 583 (8th Cir. 1997) (quoting United States v . Alexander, 48 F.3d 1477, 1492 (9th Cir. 1995)). Stated differently, impermissible double

counting occurs "when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." United States v. Waldner, 580 F.3d 699, 707 (8th Cir. 2009) (quoting United States v. Smith, 516 F.3d 473, 476 (6th Cir. 2008)). "We review de novo whether a district court impermissibly double counted in applying the sentencing guidelines." Hipenbecker, 115 F.3d at 583. We also "give *due deference* to the district court's application of the guidelines to the facts." Buford v. United States, 532 U.S. 59, 63 (2001) (quoting 18 U.S.C. § 3742(e)).

The Guidelines direct sentencing courts to first apply the appropriate specific-offense characteristics and then apply Chapter Three adjustments. U.S.S.G. § 1B1.1(a)(2)-(3). The district court applied a 4-level enhancement for abduction under § 2A3.1(b)(5). A person has been abducted if she "was forced to accompany an offender to a different location." Id. § 1B1.1, cmt. n.1(A). The court then applied a 2-level upward adjustment for physical restraint under § 3A1.3. "'Physically restrained' means the forcible restraint of the victim such as by being tied, bound, or locked up." Id. § 1B1.1, cmt. n.1(K). The commentary on "Restraint of Victim" states, "Do not apply this adjustment where the offense guideline specifically incorporates this factor, or where the unlawful restraint of a victim is an element of the offense itself (e.g., this adjustment does not apply to offenses covered by § 2A4.1 (Kidnapping, *Abduction*, Unlawful Restraint))." Id. § 3A1.3, cmt. n.2 (emphasis added). Strong argues that this comment precludes the court from applying the physical restraint adjustment because it applied the abduction enhancement. However, "the drafters did not intend that [abduction and physical restraint enhancements] be considered mutually exclusive, but rather gradations of aggravating conduct." United States v. Gall, 116 F.3d 228, 230 (7th Cir. 1997); see also United States v. Smith, 320 F.3d 647, 657-58 (6th Cir. 2003) (rejecting a double counting claim that was based on the application of abduction and physical restraint). Also, the offense in this case was aggravated sexual abuse under U.S.S.G. § 2A3.1, not abduction. Had the offense been abduction, adding a physical restraint adjustment would have clearly been improper based on § 3A1.3, cmt. n.2.

-11-

Strong further argues that the conduct supporting the abduction enhancement was exactly the same conduct used to justify the physical restraint adjustment. However, the PSR shows that each enhancement was applied to separate conduct. Moreover, based upon the Guidelines' definition of abduction, the evidence used to justify the physical restraint adjustment would not have supported the abduction enhancement. The abduction enhancement was based on Strong "forc[ing Parkhurst] to return to the Strong residence after he located her at a neighbor's residence following her attempt to flee." Merely dragging a victim from one room to another is not abduction. United States v. Cooper, 360 F. App'x 657, 659 (7th Cir. 2010). Here though, after Parkhurst escaped, she was actually dragged to "a different location," not merely another room. Thus, the abduction enhancement was proper. The physical-restraint adjustment was based on Parkhurst's three-day confinement to the Strong residence and her inability to leave. When she tried to leave, Strong threatened and physically assaulted her. This court has upheld physical-restraint adjustments where a victim was pushed and grabbed to prevent her from leaving the bedroom, Arcoren v. United States, 929 F.2d 1235, 1246 (8th Cir. 1991), and where a victim was held to the floor, threatened with a weapon, and forcefully tattooed after being told he could not leave the trailer. United States v. Aguilar, 512 F.3d 485, 488 (8th Cir. 2008). Strong's physical restraint adjustment was adequately supported by the facts of the case. Therefore, the "kind of harm [Parkhurst suffered while being physically restrained was not] already . . . fully accounted for by application of" the abduction enhancement. Hipenbecker, 115 F.3d at 583. As such, the district court committed no impermissible double counting.

## III. CONCLUSION

The judgment of the district court is affirmed.

-12-

KELLY, Circuit Judge, dissenting.

I agree that the fact and basic circumstances of Strong's prior, unrelated sexual assault of Clarissa Smith were admissible under Rules 413 and 403 for the reasons given by the court. I disagree, however, that it was permissible to introduce the particular evidence that the government did on this issue. When it comes to prior sexual assaults, Rule 413 lifts many of the usual restrictions on introducing evidence of a defendant's prior bad acts to show action in conformity with past behavior. See 23 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5416 (Supp. 2010). But evidence of past sexual assaults is still inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. See United States v. Never Misses A Shot, 781 F.3d 1017, 1027 (8th Cir. 2015); United States v. Sumner, 119 F.3d 658, 661–62 (8th Cir. 1997).

In this case, the government did not limit the evidence to a straightforward recitation of the fact and circumstances of the prior sexual assault. Instead, the government put on the stand an FBI agent who investigated the prior sexual assault of Clarissa Smith, and who described the assault and its aftermath in graphic detail, telling the jury that Strong "had bashed her head off [a] nightstand" and "it was just blood everywhere" in the room where the assault took place, "including the ceiling." Through the agent, the government introduced six photographs of Smith's injuries and the bloodstained room for the jury's inspection.

Clarissa Smith herself then testified, at one point breaking down on the stand. After some preliminary questioning, the prosecutor began asking her leading questions to elicit a description of the prior assault. Smith simply answered yes to such questions as: "Did he punch you in the face? . . . And did that cause two big black eyes on your face?"; "Did he strangle you? . . . And by strangling you, did he put his hands around your neck?"; and "Did he take your head and bash your head into a wooden stand in the bedroom?" At one point, after asking Smith whether she

-13-

still had a scar on her back from where Strong bit her, the prosecutor asked her to show the scar to the jury, which she did. At closing, the government returned to Smith's assault, emphasizing the "emotional scars" that made it "difficult for her to relive what happened to her five years ago." It listed off Smith's injuries and again showed the jury photographs of her wounds.

Much of the evidence the government introduced pursuant to Rule 413 was, in my view, substantially more prejudicial than probative of Strong's guilt in this case and therefore inadmissible under Rule 403. Showing the jury photographs, coupled with graphic descriptions of Smith's injuries and her own harrowing but largely duplicative testimony, added little in the way of probative propensity evidence to a verbal recitation of Strong's prior acts, but the potential for these pieces of evidence to "inflame the jury" and "distract[] the jury from its task" by provoking an emotional response is evident. United States v. Ford, 17 F.3d 1100, 1103 (8th Cir. 1994); see also Fed. R. Evid. 403 advisory committee's note ("'Unfair prejudice' within [Rule 403's] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."); United States v. Old Chief, 519 U.S. 172, 181 (1997) (warning against the danger that a jury "uncertain of guilt . . . will convict anyway because a bad person deserves punishment"); United States v. Rogers, 587 F.3d 816, 822–23 (7th Cir. 2009) (explaining that "evidence of prior sexual offenses may still pose significant dangers against which the district court must diligently guard," including that "a jury might use such evidence . . . to convict a defendant because it is appalled by a prior crime the defendant committed rather than persuaded that he committed the crime charged"); United States v. Jones, 748 F.3d 64, 71 (1st Cir. 2014) (listing improper inferences); United States v. Guardia, 135 F.3d 1326, 1330–32 (10th Cir. 1998). As a result, I cannot agree that there was "no unfair prejudice" from the admission of the prior sexual assault evidence as it came in at trial. Ante at 7. On the contrary, it was significantly prejudicial, and given the cumulative nature of the evidence, the prejudice substantially outweighed any probative value.

-14-

Strong's conviction, then, can only be affirmed if the erroneous admission of this prior sexual assault evidence was harmless.[3] See Fed. R. Crim. P. 52(a). The government bears the burden of showing that it was. See United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). In my judgment, that burden has not been met.

The court's description of Parkhurst's confinement, ante at 2, is in fact drawn entirely from Parkhurst's testimony. The full measure of evidence at trial was far more equivocal. Although Parkhurst testified that Strong physically prevented her from leaving his father's house from June 6th through June 8th,[4] several other witnesses testified that they saw her, uninjured, at Strong's father's house and elsewhere that weekend. Although the testimony from these witnesses was not without its own problems, it was clearly inconsistent with Parkhurst's testimony. One witness, Paul Stillday, testified that he saw Parkhurst the evening of June 7th in the living room of Strong's father's house. Another, Mary Ellen Cook, testified that the evening of June 7th, Parkhurst made a phone call from Strong's father's house and then visited Paul Stillday's home the following day with an acquaintance named Shannon Rainey. Yet another, Reginald Stillday, testified that he gave Strong a ride on June 8th and saw Parkhurst and Rainey in a car by themselves. And Rainey

_____

[3]The government appears to agree that Strong preserved his objection to each individual piece of evidence concerning the prior sexual assault. It nevertheless contends that even if the admission of some of the prior sexual assault evidence was erroneous, the district court's decision should be reviewed for plain error, see Fed. R. Crim. P. 52(b), because Strong objected to all the prior sexual assault evidence, and not just the subset of it that was inadmissible. But the government cites no authority for the proposition that a defendant who objects to *all* sexual assault evidence, some of which is admissible, waives his otherwise valid objections to the pieces of evidence which are not admissible.

[4]Parkhurst testified that, at least from June 7th–8th, Strong "required [her] to stay inside the bedroom the whole time."

herself testified that she saw Parkhurst relaxing on a bed in the living room of Strong's father's house the afternoon of June 8th and gave her a car ride.

There was also reason to doubt the reliability of Parkhurst's own testimony. Parkhurst agreed on cross-examination that she had been drinking heavily that weekend and that "the alcohol affected [her] ability to remember." She conceded that she could not remember whether there was a party at Strong's father's house on June 7th (there was), or who had come over. Moreover, her account of escaping from Strong's house was inconsistent: According to Sergeant Alexandra Dow of the Red Lake Police Department, who interviewed Parkhurst at the hospital, Parkhurst said she had escaped while Strong had fallen asleep, but Parkhurst herself testified at trial that she escaped when Strong was in the bathroom. And both Dow and Paul Smith, a criminal investigator with the Red Lake Department of Public Safety, testified that she never reported a sexual assault when they talked to her at the hospital. In fact, she first reported the sexual assault ten days after the car crash, during an interview with an FBI agent.

Without the prior sexual assault evidence, this would be a weak case for the government. Indeed, it is evident that the jury was influenced by the prior-crime evidence, since both questions it asked of the court during its deliberations concerned the sexual assault of Clarissa Smith, not the crime Strong was on trial for.[5] Under these circumstances, it is difficult to see how the government could show that the admission of the highly inflammatory evidence discussed above was not prejudicial,

_____

[5]The first, which the district court declined to answer, asked what counts had been dismissed in the prior case involving Smith. The second suggested that the jury thought the jury instructions were contradictory insofar as they suggested that the prior sexual assault could be considered in determining guilt, but that Strong could not be convicted because of the prior sexual assault. In response, the district court appropriately attempted to explain the distinction between the two concepts.

even if a more clinical description of the prior sexual assault had come in. See supra at 13–14. I would therefore vacate Strong's conviction and remand for a new trial.

But even assuming Strong's conviction should be affirmed, I believe the application of a four-level enhancement in calculating his Guidelines range was erroneous. See USSG § 2A3.1(b)(6). Application of the abduction enhancement requires showing by a preponderance of evidence that Strong abducted Parkhurst. See United States v. Saknikent, 30 F.3d 1012, 1013 (8th Cir. 1994). The factual basis offered by the government for this enhancement is that Strong began dragging Parkhurst back to the house after he caught her as she was trying to escape. But that is not what the evidence showed. The only evidence of what happened when Strong caught Parkhurst came from Parkhurst herself, who testified as follows:

Q. Okay. And what did he do when he caught you?
A. Start bringing me back to his house.
Q. Did he grab you in any way?
A. Yes.
Q. How did he grab you?
A. He wrapped his arms around me.
Q. **Where did you go after he wrapped his arms around you?**
A. **I just remember being by the road if I went anywhere.**

(Emphasis added.) In other words, when directly asked where Strong took her, Parkhurst could not say she had been taken anywhere at all.[6]

---

[6]In light of this testimony, the only logical interpretation of Parkhurst's previous statement that Strong "[s]tart[ed] bringing me back to his house" is that it refers to his grabbing her in preparation for dragging her back.

As the court notes, the Guidelines define "abduction" to mean "that a victim was forced to accompany an offender to a different location." USSG § 1B1.1, cmt. n.1(a). The testimony quoted above is not a sufficient basis to find that Strong forced Parkhurst to accompany him from one location to another; it is, instead, consistent with Strong grabbing Parkhurst by the side of the road and throwing her in front of a car. That is not an "abduction" by any sense of the term, let alone the Guidelines definition.[7] Cf. United States v. Eagle Thunder, 893 F.2d 950, 954–55, 956 (8th Cir. 1990) (holding that application of abduction enhancement based on victim's statements was erroneous when she recanted those statements at trial).

Even if – contrary to the trial testimony – we assume that Strong did move Parkhurst, there is no testimony suggesting that Strong moved her to "a different location," as the enhancement requires.[8] See United States v. Whatley, 719 F.3d 1206, 1222–23 (11th Cir. 2013) (applying ordinary meaning of the term "different location" to hold that forcing bank employees to move around at gunpoint did not constitute an abduction); United States v. Eubanks, 593 F.3d 645, 654 (7th Cir. 2010) (holding that dragging a store employee about six feet from back room to front room of a store was not abduction); cf. United States v. Reynos, 680 F.3d 283, 289–91 (3d Cir. 2012) (affirming district court's determination, after soliciting videos and information on "exact layout" of building, that destination was "a different location"

---

[7]The district court made no explicit factual finding to the contrary that might warrant our deference, stating simply that "based upon my memory of the testimony – I have not reviewed the transcript – but I'm satisfied that there's sufficient basis in the – factual basis in the testimony to support the enhancement."

[8]In fact, the government conceded at oral argument that Strong's conduct was "more of an attempted abduction because he didn't complete it." See Oral Argument at 23:35–23:50, http://media-oa.ca8.uscourts.gov/OAaudio/2016/2/152083.MP3. It may be that this concession decides the issue, as an attempted abduction is not likely to include a person successfully forcing another to accompany him to a different location. Otherwise, it would be an actual abduction.

by virtue of its "locked door, separate walls and distance from" origin); United States v. Osborne, 514 F.3d 377, 388–91 (4th Cir. 2008) (relying on fact that victims were moved between sections of store separated by secured door and counter to find that they were moved to "a different location"). The court agrees that "the evidence used to justify the physical restraint adjustment would not have supported the abduction enhancement." Ante at 12. That evidence, according to the government, was Parkhurst's testimony that whenever she would try to leave, Strong "would follow me to the door . . . grab me by my hair, *pull me back*, throw me on the floor." (Emphasis added.) Reading Parkhurst's testimony about being seized by the side of the road, one cannot conclude that the abduction enhancement was based on more than this type of limited movement. Her testimony therefore does not support the conclusion that she was dragged to "a different location," so applying the abduction enhancement was improper.

Finally, I believe the district court's decision to exclude the defendant's expert was in error, though it would not, in my view, warrant reversal. The government agrees that the district court was wrong to exclude the expert's testimony under Rule 608 of the Federal Rules of Evidence. But it nevertheless contends that it was properly excluded because whether Strong pushed Parkhurst in front of the car was irrelevant to the sexual assault charge. Whatever might be said for this claim, it wasn't the view of the district court or the government at trial.

The trial began with the government spending much of its opening statement on the car crash, telling the jury not just that it took place, but that Strong *pushed* Parkhurst in front of the car. It then solicited testimony from numerous witnesses, including Parkhurst, Sergeant Dow, and Smith, that Strong pushed Parkhurst in front of the car. In fact, one government witness, Montana Keoke, was called *solely* to testify about the car crash. In closing arguments, the government returned to the same theme, stressing the fact that Strong "threw [Parkhurst] in front of the car," and

arguing that this was relevant to show an element of sexual assault – namely, that Strong used force.

I agree, of course, that the district court has discretion in determining whether or not to admit evidence. But that discretion must be exercised consistently. Evenhanded application of the rules of evidence is especially important in criminal cases, where the defendant has a constitutional right against the arbitrary exclusion of his witnesses' testimony. United States v. Turning Bear, 357 F.3d 730, 733 (8th Cir. 2004). The district court would have been within its rights to have permitted both the government and the defense to introduce evidence about whether Strong pushed Parkhurst, and it would have been equally entitled to have barred both sides from presenting such evidence. What it could not do was permit the government to introduce such evidence but forbid the same from the defense – particularly on the shaky theory that it was relevant for the government but not so for the defense.[9]

Despite the error, I would conclude that the exclusion of the expert was harmless. Even if the exclusion of the expert implicated Strong's constitutional right to present a complete defense, meaning the verdict could only stand if there was no reasonable possibility that the exclusion of the evidence contributed to the jury's guilty verdict, Chapman v. California, 386 U.S. 18, 22 (1967), that standard is met here. The expert would only have testified that the physical evidence was inconclusive as to whether Parkhurst was pushed in front of the car, not that the physical evidence was inconsistent with Parkhurst's testimony. Any relevance this

---

[9]Rule 702's requirement that expert testimony be helpful to the trier of fact is synonymous with the relevance requirement that applies to all evidence; it does not impose a separate hurdle on expert testimony. See Johnson v. Mead Johnson & Co., 754 F.3d 557, 561–62 (8th Cir. 2014); In re Air Crash at Little Rock, Ark., 291 F.3d 503, 514 (8th Cir. 2001); Bonner v. ISP Techs., Inc., 259 F.3d 924, 929 (8th Cir. 2001). The government does not argue that any other requirement of Rule 702 was not met.

conclusion might have had to Strong's guilt is sufficiently attenuated that one can conclude with confidence that "the guilty verdict . . . was surely unattributable to the error." Sullivan v. Louisiana, 508 U.S. 275, 279 (1993).

In sum, I would vacate Strong's conviction and remand for a new trial. Even overlooking the admission of the prior sexual assault evidence, however, I would vacate Strong's sentence and remand for resentencing.

———————————————